The Ohio and Mississippi Railway Company *v.* Hill, Administratrix.

No. 992.

OHIO AND MISSISSIPPI RAILWAY COMPANY *v.* HILL, AD=
MINISTRATRIX.

CONTRIBUTORY NEGLIGENCE.—*Complaint.—General Averment of Freedom
from.—Specific Allegations.*—In an action based on tort, the general
allegation that the plaintiff is free from contributory negligence is
sufficient, unless it clearly appears from the facts pleaded that the
person injured was guilty of such negligence; and the facts relied
upon to show proper care on the part of the injured person need not
be specially pleaded.

SAME.—*Question of Fact, of Law.—Railroad.— Personal Injury.*—A
passenger train was standing on a side track which crossed a pub-
lic street extending north and south, the rear end of which train
obstructed the highway except about ten feet on the west, and on
another track just south of the one occupied by the passenger train
was another track crossing said street, on which there was a switch
engine standing headed to the west, the rear end of the engine be-
ing within about five feet of the west side of the street. A. ap-
proached the crossing and observed the position of the switch en-
gine and passenger train, and that they were standing in the same
positions as when he had noticed them some fifty minutes pre-
vious thereto, and started to cross the south track and go around
the rear end of the passenger, but before he could reach the rear
end thereof, the switch engine was suddenly and rapidly started
toward him, without signal or warning, and concluding that he
could not with safety proceed farther, he turned and made an ef-
fort to get off the track, but before he succeeded in doing so, one
foot remaining on the track when he was struck by the engine and
received the injuries from which he died in a few hours thereafter.
*Held,* that on the facts and circumstances disclosed, the court can not
say, as a matter of law, that A. was guilty of contributory negli-
gence.

RAILROAD.—*Negligence.—Personal Injury.—Railroad Crossing.*—A rail-
road company is clearly guilty of actionable negligence, when in
the night time, without light or signal or warning, it suddenly and
rapidly moves an engine across a public street, thereby causing per-
sonal injury to a traveler on the crossing.

APPELLATE COURT PRACTICE. — *Subsequent Appeal. —Res Judicata.—
Same State of Facts.*—Where, on appeal, the appellate tribunal held
that the appellee could not recover on the facts disclosed, such con-
clusion will be binding on any subsequent appeal of the same cause,
where the state of facts remains the same; but where the facts are

The Ohio and Mississippi Railway Company *v.* Hill, Administratrix.

different, or are more strongly and clearly presented as to warrant a different conclusion, the former decision will not operate as *res judicata*.

INSTRUCTIONS TO JURY.—*Personal Injury.—Railroad Crossing.—Duty to* "*Stop*," "*Look*" *and* "*Listen*."—Where the court instructed the jury, in an action against a railroad because of personal injuries received at a crossing, that when one approaches a railroad for the purpose of crossing it, it is his duty to "look" and "listen," the instruction was not bad for failure to also state that such person should "stop," etc. In view of the facts and circumstances, it was not necessary that the instruction go so far.

JURY.—*Misconduct of.— Taking Record to Jury Room.— Affidavit.—* Where, on a subsequent trial of a cause, it is alleged that the verdict in the former trial, together with the papers in the case, was taken by the jury to their room, but the jury make affidavit that the verdict, if taken to their room, was not seen or commented on by any of them, and that they did not know of its existence there, such charge, in the light of the showing, can not work a reversal.

From the Clark Circuit Court.

*J. K. Marsh, W. M. Ramsey, L. Maxwell* and *R. Ramsey,* for appellant.

*F. B. Burke,* for appellee.

DAVIS, J.—On the first trial, appellee recovered verdict and judgment for $3,000. There was an appeal to the Supreme Court. *Ohio, etc., R. W. Co.* v. *Hill, Admx.,* 117 Ind. 56.

On return of the case to the lower court the pleadings were amended and issues reformed, and a second trial resulted in a verdict and judgment in favor of appellee for $3,500.

The errors assigned are:

1. The court erred in overruling the demurrer to the first paragraph of the complaint.

2. The court erred in overruling the demurrer to the second paragraph of the complaint.

3. The court erred in overruling the demurrer to the third paragraph of the complaint.

4. The court erred in overruling the motion to re-

The Ohio and Mississippi Railway Company *v.* Hill, Administratrix.

quire the third paragraph of the complaint to be made more specific.

5. The court erred in overruling the motion for a new trial.

The first, second, third, and fourth errors assigned may be considered together.

The contention of counsel for appellant is that no facts showing the negligence complained of are pleaded, and that it is not alleged in what manner the causing of the locomotive to pass rapidly over the side track and switch, and the failure to give the signals caused the injury to the deceased. As to these objections, it is sufficient to say that an examination of the complaint discloses that negligence on the part of the appellant is charged in general terms as the proximate cause of the injury, and the facts in relation thereto are so fully pleaded as to constitute a good cause of action.

It is further urged, in substance, that the facts which are relied on to show that the decedent exercised proper care should be specially pleaded, and that the general averment that he was not in fault is not sufficient.

It has often been decided that the general averment, in such cases, that the injury was caused without any fault whatever on the part of the deceased is sufficient, unless it clearly appears, from the facts pleaded in the complaint, that the person injured was guilty of contributory negligence.

Each paragraph of the complaint is sufficient to withstand the demurrer. There was no error in overruling the motion to make the third paragraph more specific.

It is next insisted that the verdict of the jury is not sustained by sufficient evidence. The evidence tends to prove that the Ohio and Mississippi Railway, running north and south, and the Jeffersonville, Madison and

Indianapolis Railway, running east and west, cross at right angles in the city of Jeffersonville. The two railways, at the time of the injuries which constitute the basis of this action, were connected by a double-tracked Y, about 1,100 feet in length, extending from the west side of the O. & M. to the south side of the J., M. & I. The tracks of the Y crossed Illinois avenue, a public street which runs north and south, diagonally, upon a grade above the surface of the balance of the street. The tracks of the Y were so separated that persons might ordinarily walk between them, but this could not be done at the point where the accident .occurred when trains were on both tracks. It had been customary for years for the J., M. & I. to bring freight cars over from Louisville on its main track and throw them in upon the Y, to be taken up by the O. & M. and removed to its main track and placed in its trains. This was done by means of a switch engine passing back and forth over the Y, but its duties did not require it to go as far west as Illinois avenue unless it was for the purpose of protecting the crossing.

When the cars were thus being brought over by the J., M. & I., and thrown in upon the Y tracks, its passenger trains could not go out over the main track. Illinois avenue was crossed by the Y tracks within about twenty-five feet of Hill's house, and between his house and Ninth street, which was within ninety feet of Hill's house; that the Ninth street depot is about five hundred feet east from the intersection of Ninth street with Illinois avenue; that on the evening in question a switch engine was standing on the south track of the Y heading west from the avenue, and with its east end about five feet west of the west line of the avenue, and that it had been standing there about fifty minutes before Hill was injured and that an empty passenger train was stand-

ing on the north track of the Y, waiting an opportunity to back over on the bridge to Louisville; that the rear end of said train was resting on Illinois avenue and extended from the east side of said avenue to within about ten feet of the west side of the same; this train was about two hundred and fifty feet long and was headed around toward Broadway, with the curve of the switch in a southeast direction, and had been standing in that position about one hour. About eight hundred feet of the Y extended southeast of Illinois avenue. Such were the positions of the passenger train and switch engine when Hill reached his house in the evening and when he left it immediately before his collision with the switch engine on the first of September, 1885.

After having had his supper, he left his house about 7 o'clock in the evening, for the purpose of going to the Ninth street depot, and passed through his front gate, turning north up the avenue towards the Y tracks. It was then about dark, but the switch engine and the passenger train could readily be seen from his house. Hill was and for a long time had known of the custom and methods of the company at that point, and was thoroughly familiar with the situation.

When Hill approached the Y on his journey, and as he reached the top of the fill at the track, the evidence tends to prove that he looked towards the switch engine and saw it standing in the same position in which it was when he went home to supper. He then stepped on the track, directing his attention towards the passenger train, and proceeded, with the apparent intention of crossing the Y on the avenue in the space in the rear of the passenger train, which was not obstructed. Just about this time the J., M. & I. threw a freight car in upon the Y track nearest to his house, and in order to avoid a collision, there being a down grade toward the avenue, the

switch engine was suddenly and rapidly started and moved without signal or warning, there being no light thereon, across Illinois avenue. On account of the down grade, the momentum of the cars was sufficient to carry them to a point about one hundred feet east of Illinois avenue, where it was the custom to hitch on to them with the engine.

About the time the engine was started on this occasion, Hill seems to have observed it was moving, and on account of the fact that the passenger train was at this point in the street in front of him he appears to have concluded he could not, with safety, proceed forward, and therefore he was seen to turn and make an effort to get off the track, but did not fully succeed. One foot seems to have been on the track when the engine struck him, inflicting the injuries from which he died in a few hours thereafter.

The parties were equally conversant with the situation and surroundings. The company had the right to cross the avenue with the engine. Hill had the right to cross the tracks on his journey up the street. It was the duty of the company to give signal or warning before crossing the avenue with the engine. It was the duty of Hill to use his faculties of seeing and hearing, and to exercise care in proportion to the danger likely to be encountered in crossing the tracks on that occasion. The company was clearly guilty of actionable negligence in suddenly starting and rapidly moving the engine across the avenue without light and without signal or warning.

The vital question on this branch of the case is, was Hill guilty of contributory negligence?

As he approached the track, the engine was standing in the same position it had occupied for nearly an hour. It is true the engine was liable to start in the direction of the avenue at any time, and it was therefore in-

cumbent on Hill, before he entered upon the track, to ascertain whether it was moving. This he appears to have done. As the engine was standing still when he reached the track, he certainly had the right to attempt to cross. It is also true that the person in charge of the engine had the right to presume that any one going north along said street across the tracks would exercise due and proper care, and Hill likewise had the right to assume that the engine would not be started backwards over the crossing without giving the proper signal.

As he was crossing the track, whether on a straight line or obliquely, is not clear, and is not material, he appears to have looked to ascertain whether the passenger train, in the rear of which he was about to pass, was moving or likely to move in that direction before he could get across.

This was the situation of Hill and the position of the train and engine, when the engine, without warning, was suddenly started towards him. Hill was undoubtedly in a perilous place, and what he observed, thought and did can only be determined from his actions as observed by others. He evidently noticed that the engine had started in his direction, and whether there was any hesitation on account of fright, occasioned by sudden and unexpected danger, or whether he was for an instant in doubt as to whether he should retreat or go forward is unknown, but it appears that he did immediately make an effort to retrace his steps and get off the track. He was in no danger so long as the engine and train remained standing. He was not required to forego travel on and along the street because the engine and train were resting thereon, or in close proximity thereto. Having, with due caution, rightfully entered upon the track, of what act of negligence, either of omission or commission,

was he guilty under the circumstances, which contributed to his injuries?

When did his position become dangerous?

Certainly not so long as the engine was standing still.

It is true that if he had not entered upon the track he would not have been hurt, but inasmuch as he had the right to cross, this act, if done in the exercise of due care, can not be said to constitute contributory negligence.

The greater part of the street was obstructed by the passenger train, and he had necessarily to cross in such manner as to pass around the rear end of that train. The fact that in the light of what we now know and understand of the situation and circumstances, it may appear that he ought, in the exercise of diligence, to have been able, in the distance it was necessary for him to go, after the engine started, and the distance the engine had to move before it reached him, to have reached a place of safety before he was struck, is not a correct test. The question is whether he exercised, in the emergency with which he was then confronted, such diligence as a man of ordinary prudence should have used, without time for calculation or reflection, under the same circumstances.

We are not prepared to say, as a matter of law on the facts and circumstances disclosed by the evidence, that he was guilty of contributory negligence in attempting to cross the tracks, or that he failed to exercise due care and diligence in his efforts to get out of the way of the engine.

There is some evidence, at least, from which the jury had the right to infer, if they gave it full credence, that Hill, under all the circumstances, exercised such diligence as a man of ordinary care and prudence should have exercised, on the instant, in such a dangerous emergency, and, after careful attention to the able and in-

teresting oral argument of learned counsel, and a diligent reading and examination of the record and briefs, our conclusion is that we should not, under the long established and well recognized rule which prevails in this State, reverse the judgment of the court below on the evidence.

It is next strenuously urged that the former judgment in the Supreme Court, on appeal, is a bar to the consideration of this appeal on its merits, because the evidence is substantially the same as on the first appeal.

It may be conceded that this court will take judicial notice of the record in the Supreme Court on the former appeal; that the bill of exceptions, containing the evidence given on the first trial, is a part of the record of which this court will take judicial notice; that the principles of law established on the former appeal, so far as applicable, remain the law of this case through all its subsequent stages, and must be adhered to, whether right or wrong, not only in the trial court, but in this court, on a second or any subsequent appeal.

The question then arises as to what is the result of the application of these principles to the case in hand. On the former trial the evidence was taken in longhand and incorporated into a bill of exceptions.

The facts which the evidence fairly tended to establish are, we assume, correctly set out in the opinion of the court hereinbefore cited. On such facts the Supreme Court adjudged that appellee could not recover. That conclusion is binding on this court on this appeal and on the same state of facts the result would necessarily be the same.

On the second trial, the evidence was taken by a shorthand reporter, and his transcript thereof written out in longhand on typewriter is incorporated in, and forms a part of, the bill of exceptions in the record in this case.

This evidence, giving appellee the favorable construction thereof, to which she is entitled under the rule enunciated by Judge ZOLLARS, in the former opinion, fairly tends to prove the facts hereinbefore stated. On such facts, we adjudge that the law is with appellee.

It is, however, earnestly insisted by counsel for appellant, as hereinbefore stated, that the evidence on the two trials was substantially the same, and therefore it is urged that this court is bound to draw the same inferences of fact therefrom as was drawn by the Supreme Court on the former appeal.

Without deciding what the result would be if the transcripts of the records clearly disclosed that the evidence on the two trials was the same, it will suffice to say, on this branch of the case, that a comparison of the evidence introduced on the two trials shows that on the second trial the evidence is more comprehensive and satisfactory than it was on the former trial.

The evidence, for instance, of the witness Holloway on the former trial is in narrative form and covers one page. On this trial it covers seventeen pages. The reccord on the former trial does not disclose when the witness first saw Hill, or in what manner he approached or entered upon the track, or that he looked before he attempted to cross, or whether the engine was standing still or moving when he reached the track, and is in fact in all respects indefinite and uncertain as to what occurred on that occasion, while on this trial the witness fully describes the situation and surroundings and what he saw, stating among other things, in substance, that the engine was standing still when Hill went upon the track, and that it did not start until Hill had reached or passed the middle of the track, and that Hill when he reached the track and before going on to it, stopped and looked at the engine where it was standing, and that the

engine, when he was on the track, started towards him very fast, without warning, and that Hill turned around and made an effort to get off the track and was partly successful, but that one leg was caught, before he could entirely succeed.

That the evidence in the record on this appeal fairly tends to prove the facts as hereinbefore summarized, is not controverted. The contention is that the statement of facts, in the former opinion, whether right or wrong, must, so far as this appeal is concerned, be taken as true.

Conceding that the facts, as stated in that opinion, are as favorable to appellee as she could ask, on the evidence set out in that record, we are of the opinion that the evidence in the record on this appeal is so much clearer and stronger as to warrant the inferences we have drawn therefrom, and that appellant can not successfully invoke the doctrine of *res judicata* as the basis for a favorable decision in this appeal.

Hill was fifty-four years of age, and left a widow and eight children surviving him, and he was a man of good habits and a good and industrious carpenter, who was always at work and supported his family. There was no evidence as to what he was able to earn, and it is insisted that the damages assessed are excessive. The damages assessed are perhaps full and ample, but are not, in our opinion, excessive.

The court instructed the jury, in substance, that it was the duty of Hill, when he approached the railroad crossing for the purpose of going upon it, to "look" and "listen." It is insisted that this was erroneous, because the instruction did not go farther and say it was also his duty to "stop" at the proper time and place. This objection, in view of the evidence, the surroundings and knowledge of appellee, is not well taken. When the location of the

engine or train is not known, the traveler should stop, look, and listen, but when, as in this case, the engine was within about twenty-five feet of him, there was no necessity to stop.

No error has been pointed out in the instructions given or refused.

It is also claimed that, without authority of the court, and without the knowledge or consent of appellant, the verdict of the jury on the former trial was, with the papers in the case, taken by the jury to their room, and that this constitutes reversible error. The jury make affidavit that the verdict, if taken to their room, was not seen, read, or commented upon by any of them, and that they did not see it or know of its existence.

On the showing made, we fail to see in what manner the appellant has been prejudiced, by what appears to have been an inadvertence, for which neither appellee nor any one else, so far as the record discloses, seems to have been responsible.

We find no error in the case that would warrant the reversal of the judgment of the trial court.

Judgment affirmed.

