Filed May 28, 1895.

No. 16,257.

## Currier et al. *v.* Elliott.

Practice.—*Law of Case.—Decision of Supreme Court.*—Principles of law established on a former appeal of a case, so far as applicable, remain the law of the case throughout all of its subsequent stages, and must be adhered to, whether right or wrong, not only in the trial court, but in the appellate tribunal.

Sale on Execution.—*Husband and Wife.—Interest Sold.—Presumption.—Real Estate.*—It can not be presumed that the sheriff, *ex parte*, in the sale of the husband's lands on execution, offered and sold more than two-thirds thereof, the interest of the husband subject to be sold in the first instance as against the wife.

Same.—*Purchase by Judgment Creditor.—Interest Acquired.*—A judgment creditor who buys at his own sale obtains only the interest which the judgment debtor has in the property sold, at the date of the rendition of the judgment, and subject to be sold in satisfaction thereof.

Same.—*Purchaser.—Privity of Contract With Creditor.—Same Person Both Creditor and Purchaser.*—A purchaser at execution sale stands in no sort of legal privity of contract with the creditor upon whose claim the judgment was obtained; nor does it alter the case that the purchaser and creditor are the same person.

CONSTITUTIONAL LAW.—*Impairing Obligation of Contract.*—*Facts Essential to Establish.*—A party who seeks to overthrow a statute as impairing the obligation of a contract, must affirmatively establish that the same impairs his contractual rights and is prejudicial thereto.

From the Marion Superior Court.

*W. A. Ketcham, S. Claypool* and *A. B. Young,* for appellants.

*W. II. H. Miller, F. Winter* and *J. B. Elam,* for appellee.

JORDAN, J.—This action was commenced in the superior court of Marion county by the appellee on October 25, 1878, for the partition of his alleged interest in certain lands acquired by him by descent through his deceased wife, Martha Elliott. This is the third appeal of this case to this court. The court below sustained a demurrer to the complaint, as the same was originally filed, and from this decision an appeal was successfully prosecuted and the judgment was reversed. See *Elliott* v. *Cale,* 80 Ind. 285.

This court remanded the cause for further proceedings, and thereupon the appellee herein, plaintiff below, filed what was termed a supplemental complaint, wherein it was alleged, among other things, that Cale had, during the pendency of the appeal, conveyed all of the realty in question to Moodie Currier, and that the latter had made conveyances to other parties who were made defendants, and the plaintiff again demanded that one-third of the several parcels of real estate be set off to him and that an accounting of the rents and profits be had. Issues were subsequently joined by the several parties upon the complaint and the respective pleadings filed. The second trial resulted in a judgment against the appellee herein, and he again appealed to this court. See *Elliott* v. *Cale,* 113 Ind. 383, which resulted in a reversal, and

the cause was again remanded to the trial court, with instructions to change its conclusions of law and make them in favor of the appellant and to adjust the rights of the parties as to the rents and improvements, etc., to order partition and to proceed in accordance with the opinion of this court.

In the opinion of the court in the appeal last mentioned the state of the pleadings and the facts especially found by the court are fully stated.

After the second reversal of the cause by this court the appellee filed a second supplemental complaint, setting up the facts that the two appellants, Currier and Maus, had continued in possession of the realty of which they were respectively in possession at the time of the former trial, and that appellee had by them been excluded and that they had received and appropriated to their own use the rents and profits, and the court was asked to make an additional special finding of the rents so received. The appellants, Currier and Maus, filed an additional paragraph of answer. In the second paragraph of each answer filed by Currier and Maus they each substantially alleged that the indebtedness upon which the judgments in favor of Kingan and the Amoskeag National Bank, these being two of the five judgments, in satisfaction of which the lands in controversy were sold, was contracted prior to the 24th day of August, 1875, at which date the act of the Legislature, pertaining to the vesting of the inchoate interest of the wife in the realty of her husband upon judicial sales, took effect. R. S. 1881, section 2508 (R. S. 1894, section 2669).

It was further alleged that in addition to the lands described in the complaint there was sold at the same time by the sheriff, on the executions issued upon these judgments, another parcel known as "part of lot 12, in square 66," which was bid off by defendant Cale in trust for

the execution plaintiff; that this last mentioned lot was incumbered by a mortgage, which was prior to the lien of the judgments; that the mortgage had been subsequently foreclosed, the land sold thereunder for the debt, a deed executed to the purchaser, and that thereby the title, which had passed to Cale for the execution plaintiffs, had been defeated. The value of all the parcels that had been sold was alleged, and also that such value was less than the indebtedness contracted before August 24, 1875.

The appellee replied to this answer, alleging that the five judgments upon which the sheriff's sale on execution was made were rendered and made liens in the following order, to wit: That of the First National Bank of Lebanon, together with one in favor of the Amoskeag National Bank and Kingan, September 5, 1876, and the others in favor of Alfred and John C. S. Harrison and Fletcher & Sharpe, September 6, 1876, and that by reason of partial payments that had been made the total amount due on the judgments, rendered September 5, was $14,466.97.

The reply further alleged that the realty sold upon the executions on said judgments, including all the parcels described in the complaint and the part of lot 12 in square 66 and certain other small parcels, was sold in the order and for the amounts stated (which were set out at length), and that the entire proceeds of the sale amounted to $32,124.28, and that thereby all of the judgments were satisfied.

It was further averred that the part of lot 12, in square 66, which the answer alleged had been lost by foreclosure and sale upon the prior mortgage, was of the value of $50,000 at the time of its sale, and that the mortgage incumbrance thereon was much less than its value, and that it was lost by defendant's failure to redeem.

A trial was had upon the issues joined, and, upon request, the court made a special finding of the facts and stated its conclusions of law thereon. The finding of facts, briefly and in substance, is as follows:

1st. That Elliott was, on and before September 7, 1876, the owner of the real estate described, and also of parts of lot 7, in square 72, and lot 12, in square 66, in Indianapolis, Indiana.

2d. That on the 5th day of September, 1876, the following parties recovered judgments in the Superior Court of Marion county, Indiana, against appellee herein, Calvin A. Elliott *et al.*, to wit: First National Bank of Lebanon, Indiana, $2,638.86 and costs; The Amoskeag National Bank, for $6,458.78 and costs; Thomas D. Kingan, for $10,166.66 and costs; and, on September 6, 1876, in the same court and against said Elliott, Alfred and John C. S. Harrison recovered a judgment for $3,-031.16, and Fletcher & Sharpe recovered one for $12,-815.97 and costs.

3d. August 29, 1876, Elliott made a voluntary assignment under the statute to John C. New, which deed of assignment included all of the real estate in controversy, and the said deed was filed in the recorder's office of Marion county, Indiana, September 7, 1876.

4th. At and prior to the rendition of these judgments Elliott had a wife, Martha Elliott, who was not a party to any of these actions, and whose inchoate interest in the lands was not directed to be sold, and that she did not join in the assignment to New, or in any way release her said interest.

5th. The real estate was levied on by the sheriff upon execution issued on these judgments and advertised for sale.

6th. New, the trustee, instituted an action to enjoin the sale upon the execution, but was defeated.

7th. Writs of *venditioni exponas* were issued upon each of the judgments and the property sold, September 8, 1877, to Cale, as trustee for the execution plaintiffs.

8th. Martha Elliott, the wife, died September 20, 1877, leaving her husband surviving her.

9th. September 14, 1878, the time of redemption having expired, the sheriff executed a deed to Cale, as such trustee, for the real estate sold. Cale took possession of the same, which he continued to hold until he conveyed the land away.

10th. October 28, 1878, Elliott demanded to be admitted into possession as a tenant in common, and also demanded an accounting of the rents and partition, all of which was refused.

11th. On December 7, 1878, Cale conveyed the real estate to Currier, one of the appellants, who took and held possession until he sold.

12th. October 1, 1880, Currier conveyed to appellant Maus lots 51 and 52 in Blackford's subdivision, which Maus then took and has continued in possession, and he, Maus, had, at said time, actual notice of Elliott's claim to the interest in the property.

13th. Currier, since conveyance by Cale to him, has continued in possession of lots 1 and 4, Wright's addition.

14th. When Maus purchased of Currier, he executed a mortgage for $2,000, which is still of record.

15th. Such real estate was of the following value: Maus property, $5,500; the property in Elliott's re-subdivision, $1,600; lot 14, Wright's addition, $900; part of lot 7, square 72, $4,000; lot 12, square 66, $50,000.

16th. The total rental value of the property while it was held by Currier, was $2,985.71; he expended for taxes, repairs, etc., $1,912.75.

17th. The rental value of the Maus property, while

held by him, was $2,683.33, and Maus expended in repairs and taxes, etc., $1,810.58.

18th.  The indebtedness on the notes accrued and was contracted as follows:    Kingan note July 6, 1875; Amoskeag National Bank, August 10, 1875.    On the other notes in March and May, 1876.    At the time of the sheriff's sale the amounts due on the judgments were as follows:    National Bank of Lebanon, $2,985.79; the Amoskeag National Bank, $7,250.38; Kingan, $4,230.80; Harrison's, $3,388.76; Fletcher & Sharpe, $14,268.55. Total, $32,124.28.

The real estate was sold in the following order for the amounts stated:

| | |
|---|---:|
| Lot 14, Wright's Addition | $800 00 |
| Part of lot 12, square 66 | 22,117 58 |
| Maus property | 6,500 00 |
| Lot 1, Elliott's Re-Sub | 350 00 |
| Lot 2, Elliott's Re-Sub | 290 00 |
| Lot 3, Elliott's Re-Sub | 280 00 |
| Lot 4, Elliott's Re-Sub | 280 00 |
| Part of lot 7, square 72 | 1,500 00 |
| The balance of the realty levied on | 6 75 |
| Total proceeds of sale | $32,124 33 |

And thereby all the judgments were satisfied.

It is further found that New, on August 20, 1877, resigned as trustee and was succeeded by one Jones; that on March 20, 1878, after the sale and the death of Martha Elliott, Jones, as such trustee, sold the real estate to the plaintiff, Calvin A. Elliott.

Upon the special finding, the court stated its conclusions of law as follows:

1st.  That Elliott, appellee, was the owner of one-third and Maus two-thirds of the Maus property.

2d.  That Elliott was the owner of one-third and Cur-

rier of two-thirds of lots 1 and 4, in Elliott's Re-subdivision of lot 14, in Wright's Addition.

3d. That the mortgage from Maus to Currier is not a lien on Elliott's one-third.

4th. That plaintiff is entitled to a partition.

5th. That plaintiff is entitled to judgment against Maus for $290.91 and against Currier for $357.65 on account of the rents and profits.

Exceptions were properly taken by appellants to these conclusions of law. Partition was awarded and judgment was finally entered in accordance with the finding of the court. An appeal was taken to the general term, where the judgment of the special term was affirmed, and this judgment of affirmance is complained of and presented by the assignment of errors in this court.

The learned counsel for the appellants and appellee respectively have very ably and fully discussed the several questions in their briefs. It is the contention of the appellants: 1st. That if the appellee, Elliott, had any interest in the real estate in controversy, which he acquired through his wife Martha, by virtue of the act of 1875, sections 2508, 2509, 2510, R. S. 1881, it was not one-third but only one-fifth, or possibly one-fourth. 2d. That the appellee had no interest in the real estate whatever for the following reasons: That the inchoate interest of Mrs. Elliott did not become absolute and vest in her on the day of the sale; that said interest was extinguished by her death on September 20, 1877; that said interest did not, nor could it have vested and have become absolute in her until the 8th day of September, 1888, the day when the legal title of the appellee, her husband, became absolute and vested in the purchaser, for the reason that prior to the last date she had died, having no interest that could descend at the date of her death.

Vol. 141—26

These propositions are discussed and pressed upon us for a consideration with much earnestness by appellants' counsel.  Upon an examination of the decision of this court, in the first appeal of this cause, *Elliott* v. *Cale*, 80 Ind., *supra*, it was decided that the inchoate interest of Mrs. Elliott, under the act of 1875, *supra*, in and to the real estate in controversy, vested and became absolute on the day of the sheriff's sale, and that her death thereafter did not prevent it from so vesting, and that her husband was entitled to partition.

On the second appeal, *Elliott* v. *Cale*, 113 Ind., *supra*, the questions raised by appellants upon the propositions last mentioned were all decided adversely to the contention of the appellants, as made under the facts then, and still existing in this case, in respect to these particular points.  It is finally settled by repeated decisions, "that principles of law established upon a former appeal of a cause to this court, so far as applicable, remain the law of the case throughout all of its subsequent stages, and must be adhered to, whether right or wrong, not only in the trial court, but in this court, on a second or any subsequent appeal."  *Lillie* v. *Trentman*, 130 Ind. 16, and cases there cited; *Elliott* v. *Cale*, 113 Ind., *supra*.

There is nothing presented by the facts in this case, or by any of the subsequent acts of the parties, that will exempt the case now before us from the force and effect of the rule above stated.  Consequently, these questions having been determined upon the former appeal, can not be again considered, and must be held and deemed to be at rest, so far as they relate to this particular action.

By the facts set out in the additional paragraph of answer, filed by appellants after the second reversal, they endeavored to raise the question of the constitutionality of the act of 1875, *supra*, and, in their very ably prepared briefs, they assail this statute on the ground that

in so far as it is applicable to contracts in existence prior to its taking effect, namely, August 24, 1875, it is unconstitutional and void, for the reason that it impairs the obligation of such contracts, in violation of the provisions of the Constitution of the United States. Article 1, section 10, R. S. 1881; Const. of Indiana, Bill of Rights, section 69, R. S. 1881 (R. S. 1894, sections 10 and 69).

At the very threshold of the consideration of this question we are met by the proposition of appellee that the constitutionality of this act can not be raised or controverted by the appellants herein under the facts and findings in this action. The court finds, as it appears, that the indebtedness evidenced by the notes of Kingan and the Amoskeag National Bank, and upon which their judgments were recovered, accrued prior to the taking effect of the act of 1875, and that on the day of sale the amount due upon these two judgments was $11,481.18, and on the judgment in favor of the First National Bank of Lebanon, there was due $2.985.79, making a total due on these judgments of equal date, of $14,466.97. There was realized from the sheriff's sale $32,124.28, which was more than enough to satisfy these judgments which were prior liens to the other two.

The court further finds, also, that all of the judgments were satisfied by the sale of the lands. The question arises, what interest in the realty in controversy was sold to and purchased by Cale at the sheriff's sale?

In the case of *Taylor* v. *Stockwell,* 66 Ind. 505, WORDEN, J., speaking for the court, on p. 509 of the opinion, said: "By the law of 1875, only two-thirds of the land can be sold. In other words, the latter act exempts from sale on execution the third of the land to which the wife has an inchoate right during the marriage, to become consummate on the death of the hus-

band leaving her surviving, and vests her immediately with the consummate right thereto upon such sale of the other two-thirds.''

In the case of *Summit* v. *Ellett*, 88 Ind. 227, this court, in speaking in regard to the construction of the act in question, said, on page 229 of the opinion: ''This construction of the act of * * 1875, to wit, that sales governed thereby are sales of two-thirds only, is supported by the fourth section of said act, which is, that no real property in which any married woman holds such inchoate interest, as is provided for in this act, liable to be sold with benefit of appraisement laws of the State, shall be sold on any execution or order of sale issued out of any court, for less than four-ninths of the appraised cash value thereof, exclusive of liens, *. Four-ninths being two-thirds of two-thirds, this seems to indicate an intention of the Legislature that in such cases two-thirds only of the land are to be regarded as sold, because if the purchaser should be regarded as buying all of the land he ought to pay * * four-ninths of the value of the whole; that is, two-thirds of two-thirds. The wife's third not being sold, the question is, what becomes of it?'' This case was cited in *Elliott* v. *Cale*, 113 Ind., *supra.*

In the case of *Taylor* v. *Duesterberg, Admr.*, 109 Ind. 165, on page 169 of the opinion, MITCHELL, J., said: ''Under the act of 1875, section 2508, R. S. 1881, a purchaser at an execution sale can acquire, as against the debtor's wife, only an undivided two-thirds interest in the lands sold.''

In *Mansur* v. *Hinkson*, 94 Ind. 395, the construction of the act of 1875 and the decisions of this court bearing thereon were fully considered, and it was there said: That ''creditors often have to proceed against heirs, and if they claim that the other property of the deceased is not sufficient to pay them, and that therefore one-fourth

of the widow's third of such large estate ought to be subjected to their claims, so as to reduce her holding to one-fourth of the entire estate, it is no hardship upon them to be obliged to prove such matters in court."

In *Elliott* v. *Cale*, 113 Ind., *supra*, ZOLLARS, J., on page 408, speaking for the court, said: "As the act of 1875 contemplates that not less than two-thirds of the real estate shall be sold at the judicial sale, so it equally contemplates that no more than that shall be sold at such sale, as against the wife. In other words, by virtue of the judicial sale under that act, the inchoate interest of the wife in the real estate sold, limited by that act to $20,000 in value, becomes absolute and vested in her the same as it would upon the death of her husband. It is not for the judgment creditor, nor for the sheriff or other officer making the sale, to determine, *ex parte,* any more than for an administrator, that it is necessary to sell the three-fourths or four-fifths of the real estate, and by thus diminishing the wife's title, leave her but one-fourth or one-fifth, * as the value of the real estate may exceed in value $10,000 or $20,000."

Continuing on page 409, the learned justice further said: "How, then, may the one-third which has become absolute and vested in the wife by virtue of the judicial sale, be reduced in favor of the judgment creditor? The result of the holding and reasoning in the case of *Mansur* v. *Hinkson*, *supra*, is, that the one-third thus held by the wife may be reduced down to one-fourth, according to the value of the real estate, and that, in order to bring about that end, the judgment creditor must take proceedings in court against her. We adhere to the conclusion that the proceeding there indicated will have to be pursued by the judgment creditor, in order to reduce for his benefit the one-third which the wife takes under the statute by virtue of the judicial sale. What shall be the scope and

manner of proof in such a proceeding we need not here de-
termine, for the reason that no such proceeding has been
instituted for such reduction of the interest which ap-
pellant inherited from his wife.    As the case comes to
us, appellant is entitled to have partition for one-third
of the real estate in controversy.''    Herein we have the
rule laid down:    "The law of this case," by which we
must be governed in our decision in this appeal.    With
this view of the law, that the husband's two-thirds in-
terest in the lands is all that can be sold in the first in-
stance by the sheriff, and that when it is necessary, and
the right exists under the law so to do, the judgment
creditor must take proper proceedings to reduce the in-
terest of the wife below one-third, how does it apply to
the facts as found by the court on the trial of this action?

We can not presume that the sheriff, *ex parte*, in the
sale of the lands in question offered and sold more than
the two-thirds thereof to Cale, the interest of the hus-
band subject to be sold in the first instance as against
the wife.    A judgment creditor who buys at his own sale
obtains only the interest which the judgment debtor may
have in the property sold at the date of the rendition of
the judgment, and subject to be sold in satisfaction there-
of.    See *Shirk* v. *Thomas,* 121 Ind. 147, and cases there
cited.

Then if Cale, who purchased the lands at the sheriff's
sale as a trustee for the judgment creditors, received all
of the right and interest that could be, by the sheriff in
the first instance, under the facts herein, offered and
sold, and that the interest so sold realized a sum suffi-
cient, as found by the court, to satisfy all of said judg-
ments, do the appellants, who stand in the attitude of
purchasers and owners of the undivided interest through
Cale, occupy such a position in this case, under the
facts, as to entitle them to assail the constitutionality of

the act of 1875? We think that this question must be answered in the negative. The judgments into which the contracts were merged have been paid, and are no longer in existence, and therefore the appellants are not creditors, the obligations of whose contracts this act has in any way impaired.

So far as the real estate in this suit is concerned the relation of debtor and creditor has long since terminated. As said in the case of *Davis* v. *Rupe*, 114 Ind. 588: "A purchaser at an execution sale stands in no sort of legal privity of contract with the creditor upon whose claim the judgment was obtained. It does not alter the case that the purchaser and the creditor are the same person. In respect to the property purchased they can not be the same. The creditors ceased to be creditors when the sale occurred. Thenceforward their interest in the property was as purchasers at an execution sale, not as creditors." See, also, *Connecticut, etc., Life Ins. Co.* v. *Cushman*, 108 U. S. 51.

It does not appear in this case from the record how, nor in what way, these appellants are concerned with the constitutional question which they seek to raise. A party who seeks to overthrow a statute must affirmatively establish that the same impairs his rights, and is prejudicial thereto. *Henderson, Auditor*, v. *State, ex rel.*, 137 Ind. 552.

This appellants have not shown, and hence under the facts, as they appear in this cause, they can not be heard to attack the constitutionality of the act in question.

However, if the facts in this action did present to this court the question in such a manner as would compel us to decide it, we must suggest, without deciding, that we find nothing in the contention of appellants and the authorities cited by them that would authorize us to depart from the principle *stare decisis* and overrule the decision

of *Taylor* v. *Stockwell*, 66 Ind. 505, decided over seventeen years ago, and followed with approval in a number of later cases. See *Jackman* v. *Nowling*, 69 Ind. 188; *Davis* v. *Rupe, supra; Rupert* v. *Martz*, 116 Ind. 72; *Hervey* v. *Krost*, 116 Ind. 268; *Robertson* v. *Van Cleave*, 129 Ind. 217 (228); *Anderson* v. *Anderson*, 129 Ind. 573.

We find no error in the proceedings of the court below that would authorize us to reverse the judgment. It therefore follows, from the conclusion reached, that it will not be necessary to determine the questions raised by appellants, arising out of alleged errors of the court in not permitting them to prove by parol that the lands were not sold in the order recited in the sheriff's return, and in denying their application for a postponement of the trial to enable them to have the return corrected, and in not sustaining their motion for a new trial on account of newly discovered evidence. A decision of these questions in favor of appellants would not work a reversal. Section 658, R. S. 1881 (R. S. 1894, section 670).

Judgment affirmed, with costs.

Filed Jan. 29, 1895; petition for a rehearing overruled May 28, 1895.