MAGUIRE et al. v. SHEEHAN.

(Circuit Court of Appeals, First Circuit. July 29, 1902.)

No. 430.

1. DAMAGES—PERSONAL INJURY—FACTS IN MITIGATION.

Where a plaintiff was in good health prior to a personal injury due to defendant's negligence, but the shock of such injury produced delirium tremens, by reason of which, and of his acts during delirium, his recovery from the injury was retarded and rendered less complete, the fact that his susceptibility to the disease was the result of his own voluntary acts cannot be considered in mitigation of damages, but defendant is liable for all damages resulting from the disease, as well as from the original injury.

In Error to the Circuit Court of the United States for the District of Rhode Island.

Walter B. Vincent, for plaintiffs in error.

Donald G. Perkins (J. J. Desmond, on the brief), for defendant in error.

Before COLT and PUTNAM, Circuit Judges, and WEBB, District Judge.

COLT, Circuit Judge. The alleged errors of the court below, which relate solely to the question of damages, must be considered in the light of the testimony in the case. It appeared in evidence (1) that Sheehan, the plaintiff below, prior to his injury was in good health; (2) that the delirium tremens which retarded his recovery was caused by the shock of the injury; (3) that the violent acts which delayed the healing of the wound and the knitting of the bones were committed while in a state of delirium.

This state of facts shows (1) that no question could properly arise respecting what part of the injury might be attributable to a diseased condition at the time of the accident; and (2) as the chain of causation was complete, direct, and immediate, that no question of an independent intervening cause was properly presented in the case.

The charge of the court below on the question of damages was substantially as follows: Damages mean compensation. This includes compensation for loss of time, for loss of future earning capacity, for pain, for suffering, and for all expenses incurred for nursing and in the treatment of the injury.

Upon the question of delirium tremens and the alcoholic habits of the plaintiff, the court said:

"It does appear in evidence, however, that, after the man was taken to the hospital, delirium tremens ensued, and that while he was upon his back, and should have remained in one position, in order that his leg might knit, this attack of delirium tremens rendered him practically insane, so that he moved about, tore his bandages, and even got out of bed, and that that delayed the knitting of the wound, and has prevented a recovery as complete as otherwise might have been had; in other words, that the man's previous alcoholic condition affected the injuries which resulted from the accident.

"Well, gentlemen, this is a pretty delicate matter; and I think it is the policy of the law that such damages as are the natural and probable consequences, and the actual consequence, in each case, are proper subjects for compensation. We find in our community men of various stages of indulgence in alcoholic stimulants, and it would be impracticable for the law to draw any very fine distinctions. You take the case of a cut. Suppose a man in an accident is cut. I believe it is a medical fact that the users of alcohol do not repair their wounds as rapidly as a man who has never put hot and rebellious liquors to his blood, as an old poet puts it.

"Now, suppose a case where a man of good standing in a community is injured on the highway, and is very badly cut; would it be practicable, gentlemen, for the rules of law to make fine distinctions between a man of that character, a man of perfectly reputable standing, and an alcoholic man,—between a drinker and a nondrinker?  *  *  *

"In view of these very complicated questions which might arise, it seems to me to be the better policy that you should take the party as he stands, and say what was the injury to him which was due to this accident, as its proximate cause. Now, it is true that a person injured is obliged to use his best efforts to make the injury as little as possible. If a man suffers from a railway collision, he is not relieved from his duty to go about in the business of curing himself. He cannot allow the thing to go on, and recklessly increase his injury by not attending to it, in order to get enhanced damages. He is required to use the reasonable exertions of a prudent man, and I suppose that a patient in the condition of this man would be required to use reasonable prudence in taking care of himself; and mere nervousness, mere lack of self-restraint, would not justify conduct such as tearing off bandages or getting out of bed, any more than it would justify a man who had committed an assault upon another to say that his nervous system was so attenuated or impaired by smoking or drinking that he could not resist the taunts of his adversaries. That would be no excuse at all.

"So, in this case, had the party been a man of sound mind, the doctrine might have been applicable that he is still required to use the conduct of an ordinary and prudent man under such circumstances. The evidence in this case, however, as far as I recollect it, is that this delirium was solely caused by the accident. If that is the case, gentlemen, and the man became an insane person, then the fact that he had, by his conduct in tearing off the bandages and moving about in the bed, retarded his recovery, would be no barrier to the recovery of such damages as he had in fact suffered. * * *

"I therefore instruct you that you are not entitled to deduct anything from the ordinary damages,—from such damages as you find to have ensued from this accident."

The exception of the defendants was to the whole of this portion of the charge, and not to any particular part. For the reasons which will appear in the discussion of the substantial question involved in the case, this exception must be overruled.

The defendants further requested the court to charge "that, if the previous condition of the plaintiff was such as to prevent his recovery from the accident, such condition should be taken into account."

In relation to this request the court said:

"You may certainly take into account the man's condition, gentlemen, when you approach the question of damages as affecting his earning capacity, but I think that I have sufficiently instructed you as to its bearing upon this particular question of his conduct in the hospital."

That this request is not a correct statement of the law, and should be overruled, sufficiently appears from what follows in this opinion.

The substantial question the defendants sought to raise was presented by the second request, which was also refused. This request was as follows:

"That, if the plaintiff voluntarily put himself in a physical condition where delirium tremens might easily be developed by the shock of an accident, he would be responsible so far as such condition prevented his recovery."

The defendants admit the general rule that, where a personal injury develops a latent disease, the person whose negligence caused the injury is liable to respond in damages for the results of the disease, as well as of the original injury; but they insist that a distinction should be made between different diseases. It is not denied that the rule applies to malaria, scrofula, rheumatism, erysipelas, cancer, and lockjaw, but it is said that it does not apply to ailments which are caused by voluntary and intemperate habits.

We are not aware of any such exception to the general rule. The difficulties of establishing such an exception are apparent, as was aptly illustrated in the charge of the court below. How far a latent disease, called into activity by an injury, is the result of the habits or voluntary acts of the injured, is a matter of speculation, and necessitates the investigation of difficult and occult questions of cause and effect, which lie outside the scope of judicial inquiry. Beyond general expressions in some decisions, which at most are mere dicta, there is no authority cited by the defendants which supports their contention. As an almost universal rule, the courts have declined to recognize any such distinction, and it is only necessary to refer to the following cases:

In Turner v. Railroad Co. (Sup.) 58 N. Y. Supp. 490, where the

plaintiff's intestate died from delirium tremens caused by the shock of the injury, the court said:

"If the accident to the deceased had been caused while he was, and by reason of his being, intoxicated, so that his condition might be considered as contributing to the accident, a different question would have arisen; but it requires altogether too great a stretch of moral responsibility, and necessitates the investigation of cause and effect, and would carry us into metaphysical and psychological speculation, to an extent outside the possibility of judicial inquiry, to hold that the susceptibility to delirium tremens is different from any other physical condition caused by unwise or improper habits. When disease has supervened from any cause, any aggravation of that condition by the negligence of another is a cause of action for damages, provided such damages are solely set in motion and caused by the injury."

In Sullivan v. Marin, 175 Mass. 422, 423, 56 N. E. 600, the defendant sought to prove that the plaintiff, prior to the accident, had been addicted to the excessive use of intoxicating liquors. In ruling upon this point, the court said:

"If her previous habits had been such as to lessen the probability of her complete recovery, or to prolong or aggravate the suffering caused by her injury, that fact could not be shown in mitigation of damages."

See, also, Railway Co. v. Ferguson (Tex. Civ. App.) 64 S. W. 797.

The judgment of the circuit court is affirmed, with interest, and the costs of appeal are awarded to the defendant in error.

WEBB, District Judge, concurred in the conclusion of the court before he resigned.