## RIESBECK DRUG COMPANY *v.* WRAY.

[No. 13,876.   Filed April 2, 1930.   Rehearing denied July 13, 1930.   Transfer denied July 1, 1932.]

*Herman L. McCray, Edward J. Boleman, Burrell Wright* and *Jacob S. White,* for appellant.

*Frederick R. Bonifield, Milton L. Clawson* and *Seth S. Ward,* for appellee.

LOCKYEAR, J.—This is an appeal from a judgment in the sum of $5,000, entered in the Marion Superior Court, Room 1, of Marion County, Indiana, upon a complaint filed by the appellee, Mary G. Wray, administra-

trix of the estate of Normay E. Wray, claiming damages alleged to have been sustained by reason of the death of Norman E. Wray, caused by the alleged negligence of appellant, Riesbeck Drug Company, in selling carbolic acid to the minor child of the said Norman E. Wray, the child having thereafter delivered the acid to the said Norman E. Wray, who drank it and died as a result thereof.

The appellant assigns as error the overruling of its motion for a new trial, which motion was on the following ground: The verdict of the jury is not sustained by sufficient evidence.

Mrs. Wray testified the first she knew there was anything wrong was when her husband called her into the bedroom from the kitchen, and she then learned he had sent his son, Russell Wray, eight years old, to the drug store for a bottle of carbolic acid. She did not know that the boy had gone to the drug store, and did not know her husband had the acid until just as she entered the room he was drinking the acid, and then he dropped over and became unconscious and died. She saw the bottle which had contained the acid and it had the label bearing the name of the Riesbeck Drug Store, which was about four squares from where they lived. She testified she had never authorized the drug store to sell her children carbolic acid and did not know whether the drug store knew her husband or not.

Ethel Justus stated she was employed at the Riesbeck Drug Store on the 7th of May, 1928, and was just a clerk in the drug store, not being a graduate or registered pharmacist. She remembered the 7th of May, 1928, when Russell Wray came into the store and asked for an odd amount of carbolic acid, so she went to the registered pharmacist in the store, whose name was Mr. Wade, and asked him to put it up for her. He only wanted twenty cents worth, but since it was not put

in that amount, she sold him twenty-five cents worth, which he paid for. She testified the bottle had a poison label on it; the same poison label that is put on bottles when they are put up, the label being printed in red. She heard afterwards that Mr. Wray committed suicide. She could not say positively that the little boy in court was Russell Wray, for it was in the morning and school children were coming in and out of the store, and there were a number of children there and she did not know it was Russell Wray she sold the carbolic acid to until she learned the next day of his father's death.

She testified in substance that Mr. Wade, who is the man who told her where to get the bottle of carbolic acid, was the manager of the drug store.

Charles O. Prutzman testified he was a registered pharmacist in the employ of the Hook Drug Company, having been in the drug business for 22 years. He described carbolic acid as a coal tar derivative and a deadly poison destructive to human organism, and that it would cause death taken in large or moderate quantities.

Russell Wray stated he was eight years old and he remembered his father and remembered when he died; on the morning he died his father sent him for a bucket of coal oil and afterward he sent him to Riesbeck's Drug Store and told him to get some carbolic acid because he wanted to wash his feet in it and he gave him twenty-five cents; he went down to the drug store and bought the carbolic acid from Ethel Justus and took the carbolic acid home and gave it to his father, because his father asked him for it. He had gone to the gas station for some coal oil when his father sent him a little while before. When he brought the carbolic acid home his father was in bed and he gave him the carbolic acid and went out of the room and sat down in another room. He did not know what carbolic acid was, and the lady

at the drug store did not tell him it was poison, but he gave it to his father because he told him to.

The following stipulation was made by agreement of the parties: "That the defendant Riesbeck Drug Company is a corporation duly organized under and pursuant to the laws of the State of Indiana; that there is now in existence a child, Nyola Ellis Wray, two weeks old, a child of the decedent and the administratrix; that the decedent Norman E. Wray, died on May 7, 1928, as the result of drinking carbolic acid."

It is agreed by both parties to this action that the appellee can recover only if decedent could have maintained an action for the injury had he lived.

The appellee asserts that if decedent was an irresponsible person either by reason of delirium, uncontrollable influence, frenzy or mental unsoundness, he could have recovered against the appellant herein, had he lived, for this very act and the appellant says further, suppose the infant had swallowed the acid on the way home; could the decedent have recovered for the death of the child? And answers by saying he could, but the child did not swallow the poison.

There is no law in the State of Indiana prohibiting or making the sale of carbolic acid to a minor unlawful, and there is no rule of the State Board of Health, or any of its agents, making such an act unlawful.

A recital of the evidence as above set out answers the contention of the appellee in the negative.

The boy was the agent of the father in the procurement of the acid. If the father had sent a man of full age to procure the acid, it would not have changed the legal aspect of this case. The sale of the acid was not the proximate cause of the decedent's death. There is no evidence to show sanity

or unsoundness of mind. The drinking of the acid was the proximate cause of death and it does not matter how the poison was procured.

Norman E. Wray was a man of full age, a free moral agent, he could have used the acid to wash his feet, drink it or do anything he pleased to do with it. He chose to drink it; and neither the appellant nor this court could have kept him from doing so.

Further there is absolutely nothing in the record in this cause to show that appellee ever made any offer to prove the mental incapacity or anything else in regard to the mental condition of the decedent at the time of his self-inflicted injury.

The verdict of the jury is not sustained by sufficient evidence and is contrary to law.

Judgment reversed.