RIESBECK DRUG COMPANY *v.* WRAY, ADMINISTRATRIX.

[No. 16,645. Filed March 4, 1942. Rehearing denied April 15, 1942. Transfer denied May 15, 1942.]

470

*Herbert C. Jones,* of Shelbyville, and *White, Wright & Boleman,* of Indianapolis, for appellant.

*Wilbur Pell* and *Michael Sullivan,* both of Shelbyville, and *Seth S. Ward,* of Indianapolis, for appellee.

BEDWELL, P. J.—This is the second appeal of this cause in which the appellee, Mary G. Wray, as adminis-tratrix of the estate of Norman E. Wray, seeks to re-cover damages alleged to have been sustained by the widow and children of decedent because of his wrongful death. Upon the prior appeal (*Riesbeck Drug Co.* v. *Wray* [1932], 94 Ind. App. 615, 618, 619, 170 N. E.

862) this court reversed a judgment in favor of the appellee. The assigned error at the former appeal was the overruling of appellant's motion for a new trial and the grounds of such motion relied upon by this court as a reason for the reversal were that (a) the verdict of the jury was not sustained by sufficient evidence, and, (b) the verdict of the jury was contrary to law.

In such former opinion this court recited portions of the evidence which showed, among other things, that upon May 7, 1928, Russell Wray, an eight-year-old son of decedent, at the request of the decedent, purchased of an employee of appellant a small bottle of carbolic acid. This acid was delivered by the employee to the son who returned with it to the home of his father which was about four squares from the drug store. The father was in bed when the son gave him the carbolic acid. The father then drank it and died. From the evidence at the former trial, this court reached the following conclusions:

"The boy was the agent of the father in the procurement of the acid. If the father had sent a man of full age to procure the acid, it would not have changed the legal aspect of this case. The sale of the acid was not the proximate cause of the decedent's death. There is no evidence to show sanity or unsoundness of mind. The drinking of the acid was the proximate cause of death and it does not matter how the poison was procured. . . .

"The verdict of the jury is not sustained by sufficient evidence and is contrary to law.

"Judgment reversed."

After cause was remanded to the court below, a third paragraph of complaint was filed by appellee. This was amended and the cause was tried upon a second amended third paragraph of complaint. Upon retrial

the jury returned a verdict for the appellee in the amount of $2,500.

One question duly presented by appellant is whether the verdict of the jury at the second trial was sustained by sufficient evidence or was contrary to law. This requires us to consider the effect of our former determination concerning the sufficiency of the evidence and whether such determination, as the law of the case, affects this second verdict.

The principles of law established on a former appeal of a case, so far as applicable, remain the law of the case throughout all of its subsequent stages and must be adhered to, whether right or wrong, not only in the trial court, but in the appellate tribunal. *Currier* v. *Elliott* (1895), 141 Ind. 394, 39 N. E. 554; *Elkhart and Western Railroad Company* v. *Waldorf* (1897), 17 Ind. App. 29, 46 N. E. 88; *Cleveland, etc., R. Co.* v. *Blind* (1917), 186 Ind. 628, 117 N. E. 641; *Stickler* v. *Live Stock Ins. Assn.* (1920), 73 Ind. App. 508, 127 N. E. 831.

The decision of this court upon the former appeal, that the evidence was insufficient to show that the negligence alleged was the proximate cause of the death of appellee's decedent, is the law of the case upon those facts; and if the evidence, as shown by this record, bearing upon the question of proximate cause, is substantially the same, then we must hold that the question of proximate cause has been adjudicated in the former appeal and that we are bound by the determination there reached as the law of the case. *Westfall* v. *Wait* (1905), 165 Ind. 353, 359, 73 N. E. 1089, 6 Ann. Cas. 788; *Fifer* v. *Rachels* (1906), 37 Ind. App. 275, 76 N. E. 186; *Ohio Valley Trust Co.* v. *Wernke* (1913), 179 Ind. 49, 55, 99 N. E. 734; *Philbin* v. *Carr* (1929), 90 Ind. App. 445, 162

N. E. 247; *Souders* v. *Jeffries* (1886), 107 Ind. 552, 555, 8 N. E. 288.

It is not enough, upon the present appeal, that there be additional evidence bearing upon the question of proximate cause. If there is additional evidence that is merely cumulative, the doctrine of the law of the case is applicable. *Fifer* v. *Rachels, supra.* The new and additional evidence upon the second trial must be substantially different and warrant a different conclusion. *Ohio and Mississippi Railway Company* v. *Hill, Administratrix* (1893), 7 Ind. App. 255, 34 N. E. 646; *City of Bluffton* v. *McAfee* (1899), 23 Ind. App. 112, 117, 53 N. E. 1058; *Westfall* v. *Wait* (1905), 165 Ind. 353, 359, 73 N. E. 1089, 6 Ann. Cas. 788.

The application of the doctrine of "the law of the case" is well expressed by the Supreme Court in the case of *Alerding* v. *Allison* (1908), 170 Ind. 252, 260, 83 N. E. 1006, 127 Am. St. Rep. 363, in the following language:

> "When the sufficiency of a pleading or of the evidence is challenged, the court tests the question by the rule of law applicable to the set of facts pleaded or in evidence. On appeal, if the judgment of the trial court is affirmed, then the law as declared by the court on that particular state of facts remains 'the law of the case,' as affecting the points adjudged, throughout all subsequent stages of the case. But if it is found on appeal that the trial court has erred in the application of the correct rule of law, and the cause is reversed and remanded with the right of amendment and new trial, and the pleading, or the body of the evidence, is amended by the addition of new and material facts that make another and different case, and which call for the application of an entirely different rule of law, in such instance the law as declared in the first appeal on the old facts is not 'the law of the case' on the second appeal, because the subject-

matter adjudged is not the same. We do not, however, mean by this that the mere addition of new matter to a pleading, or to the body of the evidence, is sufficient to avoid 'the law of the case' rule. Amendments to a pleading that only amplify, explain or limit the facts already pleaded, or additional evidence which is merely cumulative to evidence of the same class given on the first appeal, will not carry the question outside the operation of the rule.";

and by this court in *City of Bluffton* v. *McAfee, supra,* as follows at p. 117:

"Where it is held that a party can not recover on the facts disclosed, such conclusion is binding on a subsequent appeal if the facts remain the same; but if the facts are different, and warrant a different conclusion, the former decision is not conclusive on the subsequent appeal. *Dodge* v. *Gaylord,* 53 Ind. 365; *Eckert* v. *Binkley,* 134 Ind. 614; *Ohio, etc., R. Co.* v. *Hill,* 7 Ind. App. 255."

The only new or additional evidence introduced at the second trial was evidence concerning the mental condition of appellee's decedent when he sent his son after, and when he drank the acid. As stated by the appellee in her brief,

"The evidence shows without contradiction that the plaintiff's decedent was temporarily insane and deranged because of illness and unemployment, and was deranged because his family was in dire need of food, and he was without money and means to provide for his family because of the depression."

Is such evidence sufficient to warrant a different conclusion as to the proximate cause of the decedent's death? While it is true that this court in its former opinion discussed the absence of evidence concerning the sanity or unsoundness of mind of appellee's decedent, it nowhere indicates that such evidence was

material upon the question of proximate cause. Under the issues made by the pleadings, such evidence would have been material upon the question of contributory negligence. The complaint alleged that Norman E. Wray drank the acid and died shortly thereafter from the effects.

Although in the case of adults it has been deemed impracticable and unwise to determine contributory negligence on the basis of whether the party was mentally acute or inclined to be dull or slow-witted, although not mentally deficient, a person who is so absolutely devoid of intelligence as to be unable to apprehend apparent danger and to avoid exposure to it cannot be said to be guilty of negligence. Knowledge and appreciation of peril are essential elements of contributory negligence, and evidence is admissible to show a plaintiff's mental condition to aid the jury in determining whether he understood and appreciated the danger. 38 Am. Jur., Negligence, § 201, p. 882.

The negligence charged in each paragraph of the complaint upon which the cause was first tried was that the appellant negligently sold and placed in the hands of one Russell Wray, an infant eight years old, who did not understand the dangerous nature thereof, a bottle containing carbolic acid, without making inquiry concerning the purpose for which the acid was to be used or to whom it was to be delivered. The same charge of negligence, although stated in more detail, was the basis of the second amended third paragraph of complaint upon which the cause was retried.

We doubt whether evidence of the mental condition of appellee's decedent in this case, where there was no claim or contention that the appellant at the time of

the alleged negligent act had any knowledge concerning such mental condition, and where there is no claim that such negligent act caused the mental condition, would tend to show that the alleged negligent act of selling and placing the carbolic acid in the hands of the son, was the proximate cause of decedent's death. The mental condition of decedent at the time he sent for and drank the carbolic acid would be important in showing whether his act in drinking the same was the act of a responsible intervening agency.

A voluntary, willful act of suicide of an injured person, who knows the purpose and physical effect of his act, is generally held to be such a new and independent agency as does not come within and complete a line of causation from the injury to the death so as to render the one responsible for the injury civilly liable for the death. This has been held true even where the injured person was rendered insane by the injury. *Scheffer* v. *Railroad Co.* (1881), 105 U. S. 249, 26 L. Ed. 1070; *Daniels* v. *New York, etc., Co.* (1903), 183 Mass. 393, 67 N. E. 424. The basis of this determination is that death by suicide could not reasonably have been foreseen as a result of injury.

In the case of *Brown* v. *American Steel, etc., Co.* (1909), 43 Ind. App. 560, 88 N. E. 80, it was the theory of the appellant, who was the plaintiff below, that the decedent had received certain injuries because of.the appellee's negligence and that these injuries had produced insanity, and that this insanity caused the death of appellant's decedent by suicide, thus making the negligence of appellee the proximate cause of death. This court discusses our death statute (§ 2-404, Burns' 1933), which provides, that, "When the death of one is caused by the wrongful act or omission of another, the personal representative of the former may main-

tain an action therefor against the latter, if the former might have maintained an action had he or she (as the case may be) lived, against the latter for an injury for the same act or omission. . . ." and, on pages 571 and 572, uses the following language:

> "In cases resting on the statute there must appear to be something more than an unsound mind, though it be caused by mental disease as a sequence of the injury inflicted by reason of the negligent act or omission of the defendant. If the decedent at the time of taking his life had mind enough to know what he wanted to do, and how to do it, the line of causation from the accident to the death would be broken by the act of suicide, and the latter would be the proximate cause of his death. From the cases bearing upon the subject now being considered the rule seems to be that an action under the statute may be maintained when the death is self-inflicted, only where it is the result of an uncontrollable influence, or is accomplished in delirium or frenzy, caused by the defendant's negligent act or omission, and without conscious volition of a purpose to take life; for then the act would be that of an irresponsible agent. *Daniels* v. *New York, etc., R. Co., supra; Scheffer* v. *Washington City, etc., R. Co., supra; Goodlander Mill Co.* v. *Standard Oil Co.* (1894), 63 Fed. 400, 405, 11 C. C. A. 253, 27 L. R. A. 583; *Chicago, etc., R. Co.* v. *Elliott* (1893), 55 Fed. 949, 951, 5 C. C. A. 347, 20 L. R. A. 582; *Ronker* v. *St. John* (1900), 21 Ohio C. C. 39; *Maguire* v. *Sheehan* (1902), 117 Fed. 819, 54 C. C. A. 642, 59 L. R. A. 496."

If death by suicide could not reasonably have been foreseen as a result of negligent injury, could death by suicide of the father have been reasonably foreseen by the druggist when he sold to the infant son the bottle of carbolic acid? The rule may be stated, generally, that where harmful consequences are brought about by intervening and independent forces, the operation of which might have been reasonably

foreseen, there will be no break in the chain of causation of such a character as to relieve the actor from liability. But if the new independent intervening force was not reasonably foreseeable at the time of the defendant's wrongful conduct, the consequences, ordinarily, are not caused proximately by the original wrongful act. Where the intervening force is a deliberate act of a human being which was in no sense foreseeable by the defendant at the time of his misconduct, the chain of causation is broken.

The voluntary, willful act of suicide of an insane person, who knows the purpose and physical effect of his act, is such a new and independent agency as will not come within and complete a line of causation from a defendant's alleged negligent act in making sale of a substance or instrumentality with which human life may be taken, when there is nothing in the conditions or circumstances to indicate to the seller that the substance or instrumentality will be used for such purpose. Death by self-destruction is not a result naturally and reasonably to be expected, solely, from the sale of substances or instrumentalities with which human life can be taken. Such instrumentalities and substances would cover a great variety of objects. A purchaser of gasoline might place the same in a motor and create carbon monoxide for self-destruction. A father might send his son, who was an infant, to a store to purchase a can of kerosene and use the same for self-destruction, yet we would not say that the act of the seller was the proximate cause of the death where there was nothing in the conditions and circumstances connected with the sale to indicate that the substance would be used by another for self-destruction.

In this particular case this court determined, under the facts on the prior appeal, that the sale of the carbolic acid to the son of decedent was not the proximate cause of the death of decedent; that the drinking of the acid was the proximate cause of death. This, right or wrong, is the law of the case and is binding upon this court, or any other court, upon this or a subsequent appeal, unless the additional evidence introduced at the second or a subsequent trial warrants a different conclusion as to proximate cause. *James* v. *Lake Erie and Western Railway Company* (1897), 148 Ind. 615, 48 N. E. 222; *South Bend Home Tel. Co.* v. *Beaning* (1914), 181 Ind. 586, 105 N. E. 52; *Pennsylvania Co.* v. *State* (1895), 142 Ind. 428, 41 N. E. 937. There is no contention that there was any difference between the evidence at the two trials, except at the first trial there was no evidence concerning the sanity or unsoundness of mind of appellee's decedent, while at the second trial there was such evidence; but such evidence, without dispute, disclosed that appellee's decedent knew that he wanted to take his own life and he knew how to do it. There was no evidence which would justify a conclusion that the death of the decedent was the result of an uncontrollable impulse or was accomplished in delirium or frenzy without conscious volition to produce death. All of the evidence indicated that he wanted to commit suicide and that he carefully planned to do so. His widow testified that "he just wanted to commit suicide."

The evidence being insufficient at the first trial to show that the negligence alleged was the proximate cause of death, the evidence at the second trial does not warrant a different conclusion. The verdict of the jury is contrary to law.

The judgment is reversed with direction to sustain appellant's motion for a new trial.

NOTE.—Reported in 39 N. E. (2d) 776.