## ALERDING ET AL., EXECUTORS, v. ALLISON.

[No. 21,182. Filed March 13, 1908. Motion to modify mandate withdrawn April 6, 1908.]

1. JUDGMENT.—*Former Adjudications.*—All matters which were or might have been litigated under the issues in a former case are conclusively considered as finally adjudicated. p. 258.

2. APPEAL.—*Law of the Case.—Judgment.*—On a subsequent appeal only the questions actually decided on a former appeal will be considered as the law of the case. p. 258.

3. SAME.—*Law of the Case.—Former Record.—Judicial Notice.*—The court on a subsequent appeal will take judicial notice of the record on a former appeal, in order to determine the questions decided on such former appeal. p. 260.

4. SAME.—*Law of the Case.—Evidence.*—Where, on a former appeal, the evidence was held to be insufficient to establish certain points, such decision is the law of the case, as to such points, on a subsequent appeal, where the evidence was substantially the same. p. 260.

5. SAME.—*Law of the Case.—Applicable to Questions of Law Only.*—The "law of the case" rule applies to questions of law, but not to questions of fact. p. 260.

6. TRIAL.—*Procedure.—Rules of.—Implications of.*—The rights of appeal, of amendment, of motions for a new trial, imply the possibility of error, the sole purpose of rules of procedure being to furnish assistance in the administration of justice. p. 260.

7. APPEAL.—*Law of the Case.—New Trial.—Amendments.*—Where a cause is reversed on appeal, and the pleadings materially amended, and new evidence which is not merely cumulative given on the trial, the law declared on the former appeal on different allegations and facts, is not the law of the case on the subsequent appeal. p. 260.

8. SAME.—*Law of the Case.—Decedents' Estates.—Contracts.—Breach.—Estoppel.*—The decision, on appeal, in a claim against a decedent's estate for damages for breach of contract, the defenses being payment and the statute of limitations, is not the law of the case on a subsequent appeal, where the defense of estoppel was relied upon by defendant, and an avoidance thereof, by claimant. p. 261.

9. WILLS.—*Conditional Receipt of Legacy.—Estoppel.*—The receipt of a legacy upon the express condition that such receipt shall not prejudice the legatee's claim against the estate, creates no estoppel against such legatee. p. 266.

10. APPEAL.—*Law of the Case.—Concessions by Parties.—Wills.—Receipt of Legacy.—Estoppel.*—A concession, on a prior appeal,

that the claimant received a legacy under testator's will, which was held therein to bar her claim for damages for a breach of contract, estoppel not being a defense, is not binding on a subsequent appeal, where the defense of estoppel was pleaded and expressly relied upon. p. 268.

11. EXECUTORS AND ADMINISTRATORS.—*Possession.*—*Decedents' Estates.*—Executors, at the common law and by statute, succeed to the testator's possession of personal property, and it is their duty to conserve same, even before letters are issued. p. 269.

12. WILLS.—*Legacy.*—*Conditional Acceptance.*—*Estoppel.*—A receipt from one of the executors of certain bequeathed household articles, on the express condition that they were to be returned on demand of the executors, coupled with the oral statement that such receipt was not to bar claimant's rights against the estate because of an alleged breach of contract by the decedent, does not estop the claimant from the assertion of such right, nor discharge the claim. pp. 270, 271.

13. CONTRACTS.—*Benefits.*—*Burdens.*—*Executors.*—A decedent's estate cannot repudiate the burdens of a contract made by its executor, where it has accepted the benefits thereof. p. 271.

14. SAME.—*Ratification.*—*Decedents' Estates.*—*Executors.*—A contract made by one of the executors of a will, for the benefit of the decedent's estate, the benefits of which are accepted by it, is binding, if for no other reason, because of such acceptance. p. 271.

15. EXECUTORS AND ADMINISTRATORS.—*Powers.*—*Decedents' Estates.*—Executors, in this State, possess common-law powers, except as they have been modified by statute. p. 272.

16. SAME.—*Powers.*—*Acts of One.*—The acts of one of several joint executors or administrators in the administration of an estate are deemed the acts of all, and are valid and binding. p. 272.

17. PLEADING. — *Complaint.*—*Amendments.*—*Decedents' Estates.*—*Estoppel.*—It is not erroneous to overrule a motion to strike out an amendment to a claim for damages for breach of contract against a decedent's estate, where such amendment consisted of allegations showing that the receipt of a part of the legacy to claimant was conditioned upon its not prejudicing her rights under such contract. p. 273.

18. SAME.—*Complaint.*—*Breach of Contract.*—*Decedents' Estates.*—A claim, against a decedent's estate, showing that claimant performed services for decedent at her special instance and request, and that there is a certain sum due claimant therefor; and a claim showing that decedent contracted with plaintiff to give her, at decedent's death, her entire estate; that claimant performed the services contracted for, and that decedent failed to leave to claimant such estate, state a cause of action. p. 273.

From Hamilton Circuit Court; *Ira W. Christian,* Judge.

Action by Irene Allison against Herman Alerding and another, as executors of the will of Helen J. Tate, deceased. From a judgment for plaintiff, defendant appeals. Appealed from Appellate Court under subd. 3, §1394 Burns 1908, Acts 1901, p. 565, §10.  *Affirmed.*

*George H. Batchelor, Hefron & Harrington* and *Shirts & Fertig,* for appellant.

*Smith, Duncan, Hornbrook & Smith, William S. Christian* and *LaFayette Perkins,* for appellee.

HADLEY, J.—The claimant, in November, 1881, at the age of fifteen years, was employed by Helen J. Tate, appellant's testatrix, as a domestic, at the wage of $3 per week. In February following an agreement was entered into between the claimant and her mother on one side, and Mrs. Tate on the other, under which the claimant continued to reside with Mrs. Tate until December, 1889, when the claimant was married and went to live with her husband.   After her marriage the claimant made frequent and prolonged visits to the Tate home, and continued to make such visits, and to render important and valuable services to Mrs. Tate, until the latter's death, which occurred June 26, 1900.   Mrs. Tate died testate.   Her will was executed on November 18, 1898, contained thirty-three items, or bequests, the fifteenth and twenty-sixth of which are as follows:

"Item 15.  I give and bequeath to Mrs. Irene Allison, wife of James Allison, all the furniture, carpets, pictures, ornaments, utensils, and other household articles, of every description, in my residence, and not in this will specifically bequeathed to other legatees."

"Item 26.  I give and bequeath to Mrs. Irene Allison, wife of the same mentioned in item fifteen of this will the sum of $500."

Fifteen days after the death of the testatrix, to wit, July 7, 1900, the executors delivered to Mrs. Allison, the claimant, all the personal property bequeathed to her by item fif-

teen, and she executed to them a receipt and refunding bond therefor as follows:

"Received of Herman Alerding and Daniel Wait Howe, executors of the last will of Helen J. Tate, deceased, the articles specified in item fifteen of said will, which reads as follows, to wit:

'Item 15. I give and bequeath to Irene Allison, wife of James Allison, all the furniture, carpets, pictures, ornaments, utensils, and other household articles, of every description, in my residence, and not in this will specifically bequeathed to other legatees.'

Said articles being described in the inventory and appraisement filed by said executors, as follows:

[Here follows a list of fifty-three articles, as described and appraised in the inventory and appraisement.]

The above-mentioned articles are delivered by said executors and received by the undersigned on the express condition that they are to be returned to said executors on demand at any time before the final settlement of said estate, and I hereby bind myself in the penal sum of $——— to return said articles on demand to said executors.

                                      Irene M. Allison.

July, 1900.

I hereby acknowledge myself surety for the above-named Irene Allison, for the performance by her of the above-recited obligation.

                              J. M. Allison.
                              H. W. Tutewiler."

On June 11, 1901, appellee filed her claim in two paragraphs against the estate, which claim was as follows:

"First Paragraph. The claimant, Irene Allison, alleges that she has a just claim against the estate of Helen J. Tate, deceased, for services rendered by said claimant to said Helen J. Tate in her lifetime, and says that claimant has been and was continuously in the employ of Helen J. Tate at her special instance and request, from, to wit, February 25, 1882, until the death of Helen J. Tate, on June 26, 1900. The services rendered by said claimant under said employment being of the reasonable value of $25 per week from February 25, 1882, to December 18, 1889, and of $10 per week from said December 18, 1889, to June 26, 1900, or $15,620 in all, a bill of particulars of which is as follows:

The estate of Helen J. Tate, deceased, to Irene Allison, Dr.,

To services from February 25, 1882, to December, 1889, as companion, housekeeper, nurse, and cook, 406 weeks, at $25 per week........$10,150

To services from December 18, 1889, to June 26, 1900, as companion, housekeeper, adviser, cook, and nurse, 547 weeks, at $10 per week... $5,470

Total ..................................$15,620

Claimant further says that the estate of said Helen J. Tate is not entitled to any credits or deductions from said sum, and that said sum of $15,620 owing to claimant from said estate is long past due and unpaid.

Second Paragraph. For a further and second paragraph against the estate of said Helen J. Tate, deceased, claimant says that on, to wit, February 25, 1882, claimant while only fifteen years of age, entered the employ of Helen J. Tate, under an agreement that if she should continue in such employ until such time as she should marry, and faithfully do and perform her duties thereunder, she should receive, by will or otherwise, one-half of the estate of which said Helen J. Tate should die possessed, or if claimant would continue such employment until said Helen J. Tate should die, and faithfully and diligently do and perform her duties thereunder, claimant should at the death of said Helen J. Tate receive, by will or otherwise, the entire estate of which said Helen J. Tate should die possessed; that on, to wit, December 18, 1889, claimant, intending soon to be married, was about to quit said employment; that said Helen J. Tate was very much attached to claimant, and promised that if claimant would not quit said employment, but continue thereunder until said Helen J. Tate should die, by holding herself in readiness from that time on until the death of said Helen J. Tate, even though married, to do and perform faithfully and diligently such services as she was able, although residing elsewhere, and which she might be called upon by said Helen J. Tate to do and perform, claimant would receive, by will or otherwise, the entire estate of which said Helen J. Tate should die possessed, and claimant would not be required to do and perform as much work as she had done theretofore, or to live at the residence of said Helen J. Tate, but that claimant could dwell elsewhere and come back and forth to the residence of said Helen J. Tate

when and as often as claimant might be needed or called upon by said Helen J. Tate to render services under said employment; that, relying upon said agreement and promise, claimant faithfully and diligently, and in all things in compliance with said agreement and promise, remained continuously in said employment from, to wit, said February 25, 1882, until June 26, 1900, when said Helen J. Tate died; that from, to wit, said February 25, 1882, until December 18, 1889, claimant resided in the same house with said Helen J. Tate, and exercised general supervision over the household affairs, and faithfully and diligently performed, under said employment, the services of a companion, housekeeper, nurse and cook, and from said December 18, 1889, to said June 26, 1900, when said employment ended, claimant, although not residing in the same house with said Helen J. Tate, faithfully and diligently performed, under said employment, the services of a companion, adviser, housekeeper, nurse, and cook, as often as and whenever needed and called upon by said Helen J. Tate, in all things in compliance with and pursuant to the agreement and promise aforesaid; that said Helen J. Tate failed to carry out, by will or otherwise, her part of the agreement and promise aforesaid, but on the contrary devised and bequeathed most of her property, both real and personal, to other parties, except $500 and part of the household goods. Claimant further says that the aforesaid services rendered by her to said Helen J. Tate, under said employment, were reasonably worth the sum of $25 per week for the 406 weeks from February 25, 1882, to December 18, 1889, and $10 per week for the 547 weeks from December 18, 1889, to June 26, 1900, or $15,620 in all, which sum claimant avers is justly due her from said estate, and wholly unpaid.''

The action was originally brought and tried in the Marion Circuit Court, resulting in a judgment and verdict in favor of appellee for $6,000. On appeal to the Appellate Court (*Alerding* v. *Allison* [1903], 31 Ind. App. 397) the judgment was reversed and the cause remanded for a new trial. The venue was changed to the Hamilton Circuit Court, and in the latter court the cause was placed at issue and tried by a jury, resulting in a verdict for claimant for $8,436, and answers to divers interrogatories. A motion for

judgment upon such answers and for a new trial having been overruled, judgment was rendered upon the verdict, from which the executors appeal and assign error on all adverse rulings. On the first appeal the Appellate Court held in effect: (1) That the two paragraphs of complaint were founded upon the same cause of action; (2) that the services rendered under the agreement set up in the second paragraph were to be recompensed by a testamentary provision; (3) that the testamentary provision made for the claimant was intended by the testatrix to be in full of all claims; (4) that the claimant by her unexplained receipt of the household goods bequeathed to her by item fifteen of the will must be held to have elected to accept the legacy in satisfaction of her claim; (5) that under the issues as formed the executors had the right to raise the question of estoppel without plea. Whether these rulings of the Appellate Court on the former appeal shall be held as "the law of the case" in this appeal is earnestly and ably discussed by counsel on both sides, and claims our first attention.

The doctrine of "the law of the case," as referring to the decision of the court in a particular case on a former appeal, is analogous to the doctrine of former adjudication, but much more limited in its application.

1.

Under the rule of former adjudication, when a cause has been finally determined by a competent tribunal, all questions of controversy arising in the case must be taken as at rest forever, not only the things that were actually adjudged, but every other matter which the parties might have litigated under the issues formed. *Fichli* v. *Fichli* (1825), 1 Blackf. *360; *Gutheil* v. *Goodrich* (1903), 160 Ind. 92, 95. The rule known as "the law of the case," while as conclusive as in former adjudication, as to all matters within its scope, cannot be invoked, except as to such questions as have been actually considered and determined in the first appeal. In the application of this rule courts will take cognizance of such points only as affirmatively ap-

2.

pear in the last to have been decided in the former appeal. The rule being one which tends to prevent the judicial consideration of a particular controversy, is not to be extended beyond the exigencies which demand its application. *Dodge* v. *Gaylord* (1876), 53 Ind. 365; *Davis* v. *Krug* (1883), 95 Ind. 1, 9; *Forgerson* v. *Smith* (1885), 104 Ind. 246, 247; *Elliott* v. *Cale* (1888), 113 Ind. 383, 406; *Wine* v. *Woods* (1902), 158 Ind. 388; *Buehner Chair Co.* v. *Feulner* (1905), 164 Ind. 368; *Ohio, etc., R. Co.* v. *Hill* (1893), 7 Ind. App. 255, 263; *Sovereign Camp, etc.,* v. *Haller* (1903), 30 Ind. App. 450. In the case of *Dodge* v. *Gaylord, supra,* it is said: "It is also settled that the decision of the Supreme Court, rendered upon a given state of facts, becomes the law of the case as applicable to such facts, and if the cause be remanded for a new trial, the parties have the right to introduce new evidence and establish a new state of facts; and when this is done, the decision of the Supreme Court ceases to be the law of the case, and the court in the trial of such case is not conclusively bound by such decision, but should apply the law applicable to the new and changed state of facts." In the case of *Davis* v. *Krug, supra,* it is said: "The rule of 'the law of the case' thus limited to points considered and decided on the first appeal, meets our full approval. But we cannot agree to the claim of appellee's counsel that 'the law of the case' precludes us from considering and deciding now, on the second appeal of this cause, any questions which might have been, but were not, considered and decided as the case was presented on the first appeal. Such claim seems to us unreasonable, although we are aware that it is supported by many respectable authorities, and even by the language used in some of the reported cases of this court." In the case of *Wine* v. *Woods, supra,* it is said on page 391: "Only points decided become the law of the case."

The record in the appeal to the Appellate Court, and the opinion pronounced therein, will be regarded as a part of

the record in this appeal, so far as it will enable the court to ascertain whether the questions now presented were decided by the court in the former appeal. *Westfall* v. *Wait* (1905), 165 Ind. 353; *Mississinewa Mining Co.* v. *Andrews* (1902), 28 Ind. App. 496.

As relating to the first three propositions, the evidence submitted in this appeal is, in substance, the same as that submitted in the first appeal, and the law as declared by the Appellate Court as ruling those points must now be accepted as conclusive. *Dodge* v. *Gaylord, supra; Board, etc.,* v. *Bonebrake* (1896), 146 Ind. 311.

At the outset it should be borne in mind that the "law of the case" rule has reference to questions of law, and not to questions of fact. The term means nothing more nor less than the application of that line or rule of decision which courts have, from time immemorial, applied to like pleadings, or like facts, or sets of fact.

Some significance must be attached to the procedure concerning appeals. The very right of appeal, of amendment, of a new trial, implies the possible existence of error, of mistake, of incompleteness. The sole purpose of these provisions is to furnish the court with the means of administering justice more completely between litigants.

In the preparation of a pleading sometimes material facts are inadvertently overlooked and omitted. Sometimes new facts are subsequently discovered. This is equally true with respect to the evidence. When the sufficiency of a pleading or of the evidence is challenged, the court tests the question by the rule of law applicable to the set of facts pleaded or in evidence. On appeal, if the judgment of the trial court is affirmed, then the law as declared by the court on that particular state of facts remains "the law of the case," as affecting the points adjudged, throughout all subsequent stages of the case. But if it is found on appeal that the trial court has erred in the application of the correct rule of law, and the cause is reversed

and remanded with the right of amendment and new trial, and the pleading, or the body of the evidence, is amended by the addition of new and material facts that make another and different case, and which call for the application of an entirely different rule of law, in such instance the law as declared in the first appeal on the old facts is not "the law of the case" on the second appeal, because the subject-matter adjudged is not the same. We do not, however, mean by this that the mere addition of new matter to a pleading, or to the body of the evidence, is sufficient to avoid "the law of the case" rule. Amendments to a pleading that only amplify, explain or limit the facts already pleaded, or additional evidence which is merely cumulative to evidence of the same class given on the first appeal, will not carry the question outside of the operation of the rule. The amendment to the pleading or to the evidence must, successfully to escape the rule, carry into the case presented on the subsequent appeal a new and substantive fact. *Westfall* v. *Wait, supra.*

How do these principles apply to the case before us? In the first appeal the first paragraph was but a formal claim for personal services against the estate, and was the same as it appears in this appeal. The second paragraph set forth the claimant's alleged agreement with the testatrix, and averred her performance, and Mrs. Tate's nonperformance, and damages. Nothing was alleged concerning the bequests to the claimant, or her receipt of certain household goods from the executors. In her first complaint the claimant relied upon the ordinary rule of pleading, and stopped when she had set forth the grounds of her claim. To her complaint the executors answered the general denial, statutes of limitations and payment. These answers presented three distinct issues to the court: (1) Was the alleged contract made, and was it kept by the claimant and broken by the testatrix? (2) Had the cause of action accrued to the claimant within six years next before

the commencement of this suit?  (3)  Had the damages
been fully paid?  The record in the first appeal bears unmis-
takable evidence that the case was tried and submitted to the
jury strictly upon these lines.  There is not a word in the
testimony, nor in the instructions submitted to the jury, nor
in those requested by the executors and refused, that sug-
gests the idea of estoppel, or that the receipt of the goods
from the executors was in effect an acceptance of the testa-
mentary provision in full payment and discharge of her
claim.  Payment, not estoppel, was the issue on trial.  So
far as appears from the opinion of the Appellate Court the
claimant made out her case against all the express defenses
set up by the executors.  The reversible error was found in
a defense that arose by implication of law, and of which no
actual notice was taken or given claimant during the trial.
An admission was made by her attorney that property of the
appraised value of $310 was turned over to her by the
executors.  It is apparent that the admission was made
under, and responsive to, the plea of payment, and only as
an acknowledgment of partial payment.  As exhibited by
the record, so far as we have observed, no further notice was
taken of the admission by any one throughout the case, ex-
cept as may be inferred from the judge's sixteenth instruc-
tion, wherein he said: "If you believe from the evidence
that whatever services were rendered by claimant to de-
cedent have been paid for by said Helen J. Tate in her life-
time, or by provision in her last will, then claimant is not
entitled to recover."  The instrument in writing, called a
"receipt and refunding bond," taken from claimant by the
executors at the time the property was turned over to her,
is significant, as showing that invoking the principle of es-
toppel against the claimant had not then found lodgment in
the minds of the executors.  It reads: "Received of Her-
man Alerding and Daniel Wait Howe, executors of the last
will of Helen J. Tate, deceased, the articles specified in ar-

ticle fifteen of said will. [Setting forth a full list of the articles.] * * * The above-mentioned articles are delivered by said executors and received by the undersigned [not as a testamentary benefit, not as a legacy under the will, but] on the express condition that they are to be returned to said executors on demand at any time before the final settlement of said estate.'' A bond, with surety, to make such return upon demand of the executors, is also appended.

The estate was appraised at $54,000. There were sixteen general legacies of money, amounting to $10,000, and a residuary clause and legatee; and it seems doubtful if the peculiar wording of the receipt and return bond was wholly the result of caution for assets to pay creditors. In any case it is plain that the document was not framed with a view of enforcing a forfeiture of the claimant's right to prosecute a claim against the estate for services rendered the testatrix. The holding of the Appellate Court with respect to the fourth point is, in substance, that the unexplained receipt by claimant of the articles bequeathed to her by item fifteen of the will, must, in legal effect, be held to be an acceptance of the testamentary benefit made for her, in discharge of the contract obligation of the testatrix. In other words, that the claimant cannot have both the testamentary provision and her claim against the estate. As the case was presented to the Appellate Court the ruling was clearly right. But it may be observed that the court did not, as it might, order final judgment in favor of the executors. It would probably have done so if satisfied that the case was fully and fairly presented. The cause was remanded for a new trial.

Upon its return to the circuit court the claimant filed an amended complaint, manifestly to avoid the estoppel that had crept into her case on appeal. The first paragraph was left without change, and the amendment, besides a few minor and unimportant changes, consisted in adding to the second paragraph the following new matter:

"That said Helen J. Tate in her lifetime executed her last will and testament, under which Herman Alerding and Daniel Wait Howe became at her death, ever since have been, and still are, the executors of said estate; that said executors have wholly refused and failed to pay the aforesaid compensation, or any part thereof, although it is long past due and wholly unpaid; that said Helen J. Tate, without the knowledge and consent of claimant, executed said last will and testament, whereby said Helen J. Tate, in violation of said agreement, devised and bequeathed all her estate, both real and personal, to divers and sundry persons by way of gift, and not in payment of any debt; that among other gifts mentioned in said will were bequests to claimant of $500, and of the household goods of said Helen J. Tate, of the appraised value of $310; that the provisions of said will were not made known to claimant until after the death of said Helen J. Tate, and when, after the death of said Helen J. Tate, said Daniel Wait Howe, one of said executors, informed claimant of the provisions of said will, or part of them, and that among the bequests and devises in said will was a bequest to claimant of $500, and also one for said household goods, of the appraised value aforesaid, and asked claimant to receive and take possession of said household goods, claimant refused to receive or accept said household goods, or any part thereof, saying that, under her agreement with said Helen J. Tate, claimant was entitled to the entire estate of which said Helen J. Tate should die possessed, whereupon said Daniel Wait Howe, one of said executors, in behalf of said estate told claimant to take and receipt for said household goods, and that the taking of and receipting for said household goods by claimant would not be treated or considered by said estate, or by the executors thereof, as payment in whole or in part of any claim which claimant might have against said estate; that thereupon claimant, relying upon said statement so made in behalf of said estate, and upon the express understanding that the taking of and receipting for the household goods would not interfere in any way whatever with claimant's right to enforce her claim against said estate for services, and would not be treated or considered as payment in whole or in part of claimant's said claim, and without consulting a lawyer, did, at the solicitation of said Daniel Wait Howe, and as an accommodation to said executors, receive and receipt for said household goods. Claimant further says that the afore-

said services rendered by her to said Helen J. Tate under said employment are reasonably worth the sum of $25 per week for the 406 weeks from February 25, 1882, to December 18, 1889, and $10 per week for the 547 weeks from December 18, 1889, to June 26, 1900, or in all $15,620, which sum claimant avers is justly due her from said estate, and wholly unpaid; that there has been long and unreasonable delay in the payment thereof, and that said bequest of $500, and the one of said household goods, of the appraised value of $310, are wholly insufficient and inadequate properly to compensate claimant for the services as aforesaid rendered by claimant under said agreement. Wherefore, said claimant, Irene Allison, prays for judgment against said estate and the executors thereof for the sum of $15,620, and interest thereon, and for all further and proper relief.''

Appellants moved to strike out the new matter, which motion being overruled, they filed their demurrer to each paragraph, which being overruled, they filed an answer in five paragraphs: (1) A general denial; (2) payment; (3) estoppel, by receiving the household goods; (4) and (5) statute of limitations.

We now find the executors relying no longer on their implied defense, for they expressly plead estoppel, to which the claimant replies with the same facts she had pleaded as an amendment to the second paragraph of the complaint. But it is earnestly urged by the appellants that the new matter did not so change the character of the action as to relieve it from the operation of the rule we have been considering. It is insisted that we have here the same claim, for the same services, under the same contract, between the same parties, seeking the same relief, and opposed by the same evidence, and that the propositions of law announced in the former opinion on the several questions presented by the issues became the law of the case, and absolutely binding upon the parties through all subsequent stages of the controversy. If a case, when once presented and determined, could not afterward, on a new trial, be amended or changed by the intro-

duction of new and material facts, then appellants' conclusions would be correct. But the case we are now considering is a new and materially different case from that presented to the Appellate Court. Conceding that it is substantially the same case down to and including the claimant's admission concerning her receipt of the property, it is plain that the explanatory facts, subsequently added, make out a new case for the claimant, and one that leads to a radically different conclusion from that reached on the first appeal. We are not called upon to decide whether the issues now joined are different, or substantially the same, in legal effect, as on the former hearing; or whether the evidence in avoidance of the estoppel might not have been given without the amendment, since, in any state of the issues or of the case the executors' right, however it arose, to invoke estoppel against the claimant, by reason of her admission, was no better than the claimant's right to avoid the estoppel by evidence that she was led into an acceptance of the goods by the promises and representations of those who would close her mouth.

Concerning her acceptance of the property, the claimant testified as follows: "Q. Mrs. Allison, when and where did you sign that paper? [The receipt and bond.] A. I signed it at Mrs. Tate's residence on North East street. Q. At whose request did you sign it? A. At Mr. ———— [one of the executors] request. Q. How did you happen to be there at the time? A. Mr. ———— sent word by my husband for him to take me up. Q. You went there with your husband, did you? A. Yes, sir. Q. When you got there did you see ———— ————, executor of this estate? A. Yes, sir. Q. Was that paper [the receipt and return bond] presented to you? A. He read it to me, of course. Q. What conversation passed between you and him at that time? A. Well, he told me this was all left me by the will. That I would have to take the things out of the house. Q. What, if anything, did you

say to him? A. Well, I told him I was indignant—I would not take the things out of the house, because it was not the agreement between Mrs. Tate and me; that Mrs. Tate had agreed to leave me at her death her entire estate, and that I had a claim against the estate; that I would not receive the goods. He said 'You will have to take them out of the house. I want this house. I want Mrs. Maree to move in there. You will have to take them out, Mrs. Allison.' I said: 'I will not.' He said: 'Well, now, you take these things out and don't make any disturbance here, for we want Mrs. Maree to move in,' he said, 'and I will see that your taking these goods will not interfere with any claim you have against Mrs. Tate's estate.' Q. What goods you took, you took after this conversation with ——— ———? A. Yes, sir; I did not take them that day. Q. It was after this circumstance, after this conversation, that you took the goods? A. Yes, sir; that is the reason that I took them out of the house. I was led in by the promises made or I would not have touched the goods. He told me he would see that that would not interfere with any claim I had against the estate, and I believed ——— ———, he being a judge, and I took the goods." The testimony of the claimant was fully corroborated by her husband and one other witness. It was denied by the executor involved, and apparently discredited by other testimony and inconsistent circumstances, but the conclusion reached by the jury, from the whole evidence upon this point, is clearly indicated by the following interrogatory and answer returned with their verdict:

> Q. "Did said claimant execute to the executors of said decedent a receipt for the following articles therein specified, in the words and figures following, to wit: [Then follows a copy of receipt, bond and schedule of articles.]?
> A. Yes, but she was informed by one of the executors that by the signing of the receipt it would in no way interfere with her claim against the estate."

Under this showing we must accept, as established, the claimant's contention that she was induced to receive the goods by the promise and assurance of the active executor that such receipt, being for the present accommodation of the estate, should not interfere with or prejudice her claim against the estate.

To avoid this explanation of the claimant for a taking over of the property, appellants in their brief in this appeal state their position thus: "By making a concession on the first appeal, upon which the opinion of the court was bottomed, the appellee is now, by reason of that concession, and the resulting opinion, concluded upon the question as to whether she received the legacy under such circumstances as to bar her claim." This is surely not the law upon the facts of this case. If it is, the sooner it is changed the more creditable it will be to our jurisprudence. Such doctrine would destroy the foundations upon which rest the principles of amendment and new trial, and put an end to the power of the court to correct previous errors revealed on a retrial. Besides it would be unjust to the Appellate Court conclusively to presume that, with the same facts before it as are presented in this appeal, its conclusions would not have been different. The claimant's explanation of her acceptance of the goods gave the transaction and case a wholly different coloring, and made that which was inculpatory on the first appeal excusable on this. In other words, we are called upon to review a judgment pronounced upon a set of facts in part new and material, and fundamentally different in legal effect from the facts upon which the judgment on the former appeal rested. But it is insisted by appellants that the effect of appellee's taking over the goods is not avoided by reason of the alleged representations relied on, because (1) if made by both executors they would not have been sufficient to estop the estate from setting up the acceptance of the goods as a defense, since such

representations could only be considered as expressions of opinion, and furnish no ground for estoppel; and (2) there being two executors, one of them acting alone could not bind the estate.

It is not apparent why executors may not bind the estate in matters pertaining to the custody and care of the assets. Both at common law and under the statute the executor succeeds to the possession of the testator. *Pittsburgh, etc., R. Co.* v. *Gipe* (1903), 160 Ind. 360. It is his duty to care for and preserve the property, even before letters are issued to him. §2740 Burns 1908, §2225 R. S. 1881. The language of the receipt, and the parol evidence in its explanation, make appellee's possession, at least, in a large sense, the possession of the executors. The receipt shows upon its face that the appellee's possession was not absolute and unconditional, but qualified, and during the pleasure of the executors. She plainly had no right to dispose of the goods or convert them, and should return them—not if needed to pay debts or to equalize legacies—but upon demand of the executors. The receipt does not suggest whether the possession conferred upon appellee was that of a legatee, or of a bailee, or as a testamentary payment and discharge of a debt due from the estate. The language of the receipt is more consistent with the first two than with the latter character. The testamentary provision made for appellee was certain household goods and $500 in money. It is shown by the receipt that the $500 in money was not among the articles turned over to appellee, and that she did not receive the full testamentary benefit, and we think the Appellate Court went as far as the law will warrant in holding that the unexplained acceptance of part of property intended as a testamentary payment for services will preclude the prosecution of a claim for such services.

When, however, the facts accompanying, inducing, and characterizing the taking of the property, and the execution

of the receipt, are considered with the words em-
ployed in the instrument, the transaction very clearly
and forcibly rebuts the conclusion of acceptance in
discharge of the claim, as reached in the former opinion.
As indicated by the evidence before set forth, the executors
wanted the house to turn over to Mrs. Maree. They must
remove the furniture that, with other property, had been be-
queathed to appellee. They told appellee that it had been
willed to her and she must take it out of the house. Appel-
lee refused, giving as her reason that, for her services, Mrs.
Tate had agreed to leave, at her death, her entire estate to
appellee, and, having failed to do so, the latter had a claim
against the Tate estate. Thereupon the executor, to induce
her to remove the things, promised that he would see that the
taking of the goods should not interfere with the appellee's
claim against the estate. The transaction comes to this:
The executors, charged with the custody and preservation of
the goods, were called upon to remove them from the house.
They requested appellee to remove them. . She declined, for
fear the taking would prejudice her claim. To induce her
to do that which she would not otherwise have done, they
promised that the taking should not interfere with her claim.
Under these circumstances the taking was no taking at all,
in the sense upon which the conclusion of the Appellate
Court was predicated. The transaction did not carry the
property beyond the reach of the executors. It went into
the custody of the appellee more in the character of a bail-
ment than as payment of a debt due from the estate. The
stipulation for a return of the property on demand is wholly
inconsistent with the idea of payment. The latter implies a
complete surrender of right and dominion in the consider-
ation.

To approve of appellant's insistence would be to sanction
the doctrine that the estate may enforce a benefit and re-
pudiate the promise and inducement by which the benefit

was bestowed, under the pretense that its representatives had no legal authority to make the promise. This we cannot do. The official character of the executors was no shield. "It is not perceived," said this court in *Stewart* v. *Davis's Executor* (1862), 18 Ind. 74, 76, "that a man may do a wrongful act in a fiduciary character that he may not do in his own behalf." It is a rule universally acknowledged that a party to a mutual engagement must abide all its terms; that he may not appropriate the benefits and avoid the burdens. So it appears plain that the estate cannot in this instance adopt and appropriate such part of the mutual arrangement as was made with appellee with respect to her receipt of the goods as is of benefit to the estate, and repudiate the balance.

Again, it is insisted that because the promise or inducement was given by only one of the executors it had no binding force on the estate. If for no other reason, this contention comes to naught from the conduct of the estate in accepting and appropriating the benefits conferred by the mutual arrangement made by one of the executors. The estate could ratify what it could agree to, and the appropriation of the benefits was a sufficient ratification.

Besides, the explanatory facts, considered with the receipt under which the property was delivered and received, go to show that the mutual understanding had reference solely to the custody and preservation of the assets or goods of the estate. It clearly pertained to no contract affecting the rights of the estate or of the coexecutor. It bound nobody but the appellee. The estate surrendered no right. It was for the sole benefit of the estate, to enable its representatives to vacate the house without incurring the trouble and expense of storing the goods in a warehouse or elsewhere. Appellee acquired no benefit and received no consideration. The transaction was in every just

sense a simple matter of administrative detail in which the act of one of the executors was as efficient as the act of both would have been.

In this State executors possess common-law powers, except to the extent that they have been modified by statute. *Pittsburgh, etc., R. Co.* v. *Gipe, supra.* The old rule as laid down in 4 Bacon's Abridgement, 37 (D) is as follows: "If a man appoint several executors, they are esteemed in law but as one person, representing the testator, and therefore the acts done by any one of them, which relate either to the delivery, gift, sale, payment, possession, or release of the testator's goods, are deemed the acts of all, for they have a joint and entire authority over the whole." This definition has been adopted and observed by many of the courts of last resort in this country. See *Wheeler* v. *Wheeler* (1828), 9 Cowen *34, *35; *Murray* v. *Blatchford* (1828), 1 Wend. *583, *617, 19 Am. Dec. 537; *Dwight* v. *Newell* (1854), 15 Ill. 333, 335; *Shaw* v. *Berry* (1853), 35 Me. 279, 280, 58 Am. Dec. 702; *Shreve* v. *Joyce* (1872), 36 N. J. L. 44, 48, 13 Am. Rep. 417; *Herald* v. *Harper* (1846), 8 Blackf. *170, *172. In the latter case there were three administrators, one of whom was indebted to the estate, and the remaining two made a settlement with the one, with respect to said indebtedness. Discussing the question of power of the two acting alone for the estate, this court said: "If Scott and Wise, without Harper, were competent to perform any of the duties of the administration, they were competent to make this adjustment with him personally, as much so as if they had been settling the accounts of the estate with any other person. That the acts of one of several joint executors, in respect to the administration of an estate, are deemed to be the act of all, and are valid, has never been doubted. 2 Williams, Executors, 620; *Wheeler* v. *Wheeler* [1828], 9 Cowen *34. And it is now equally well settled, that one of several administrators stands

on the same footing, and possesses the same authority.''
See, also, *State, ex rel.,* v. *Holmes* (1880), 69 Ind. 577, 578.

The motion to strike out the amendatory matter was properly overruled. The paragraph was good before it was added, and whether the addition was surplusage, or was necessary to the admission of the proof, it did not make the paragraph bad,. and was harmless.

Both paragraphs of the claim were good, and the demurrers thereto were properly overruled, as was also appellants' motion for judgment in their favor on the answers to interrogatories.

Divers questions are presented relating to the admission and rejection of certain evidence, and also to the giving and refusing of instructions. All these have been considered, and we find that such of said questions as have not been fully disposed of by what has been said in the foregoing present no reversible error, and we, therefore, deem it unprofitable to add to the length of this opinion by reviewing them in detail. The evidence is conflicting, and we cannot weigh it. We find no error.

The judgment is affirmed.