## BAILEY v. INDIANAPOLIS ABATTOIR COMPANY.

[No. 9,460. Filed January 18, 1918.]

1. ACTION.—*Misjoinder of Actions—Amendment of Complaint.—Alleging New Cause of Action.*—An employe suing for personal injuries cannot amend his complaint to allege a cause of action for fraud in inducing him to release his claim for personal injuries, as the amended complaint states a new cause of action for property damage, which cannnot be joined with the original action, since §279 Burns 1914, §278 R. S. 1881, providing that plaintiff may unite several causes of action in the same complaint when they are included in any of the classes specified therein, places injuries to property in one class and injuries to person or character in another class. p. 473.

2. LIMITATION OF ACTIONS.—*Amendment of Pleadings.—Alleging New Cause of Action.*—While the courts should be liberal in allowing amendments to avoid the running of the statute of limitations, yet they should be confined to a restatement of the original cause of action, and not extended to a new cause of action. p. 474.

3. PLEADING.—*Complaint.—Anticipating Defenses.—Striking Out Matter.—Discretion of Court.*—Although the practice of anticipating a defense is permissible and proper in some cases, it is not ordinarily commendable, and. the trial court, in the exercise of its discretionary powers, would have been justified in striking out that part of a paragraph of complaint in an action for personal injuries, which attempted to anticipate and avoid a defense predicated on a written release; especially 'where, on a prior appeal of the case, the court determined that plaintiff could not avoid the release without returning the money received thereunder. p. 474.

4. APPEAL.—*Review.—Harmless Error.—Striking Out Amended Complaint.*—In an action for personal injuries, the striking out of a paragraph of complaint, which attempted to anticipate a defense predicated on a written release, was harmless, even if technically erroneous, where plaintiff was permitted to file an amended reply setting out substantially the same facts, by way of avoiding the effect of the release, thereby tendering issues which would permit him to introduce all of the evidence which might properly have been introduced under the pleading stricken out. p. 476.

5. APPEAL.—*Subsequent Appeal.—Law of Case.*—A holding, on an appeal in an action for personal injuries, that under the issues as

then presented plaintiff could not avoid a release set up by defendant without returning the money paid thereunder was the law of the case by which the trial court and the court on appeal was bound in all subsequent proceedings, where the amendments or changes in the pleadings were not material. p. 480.

6. RELEASE.—*Avoidance.—Return of Consideration.—Necessity.*—— Where, in a servant's action for personal injuries, defendant pleaded a written release reciting that it was in full settlement of all claims or demands on account of plaintiff's injuries and that the release was read by plaintiff and understood by him, and plaintiff replied that the principal inducement to the signing of the release was a promise of employment which had not been kept, that the employer recognized his duty and liability for the injuries by continuing to pay plaintiff his weekly wage, that plaintiff was under the care of defendant's physician, who, together with defendant, represented to him that his condition was favorable, and that within two months he would be able to return to his work, that defendant represented that, because of business engagements, it was necessary to adjust plaintiff's pay in a gross sum, and proposed to pay plaintiff $200 instead of his weekly wages, which would more than cover his wages for the time specified wherein he would make a complete recovery, that, to accommodate defendant, he accepted such sum as wages, without any consideration other than the promise of employment and believing the release to be a receipt for wages covering the period of his indisposition, and not understanding that he was parting with any right of action, or receiving the money for any different purpose, that the representations made by the physician as to the condition of his injured leg were false, and that it was necessary to have the leg amputated, the averments of such reply, when considered in connection with the answer, are insufficient to bring the case within the rule that, when the party executing a release is fraudulently led to believe that the payment made to him thereunder is something other than the settlement of the case in which the release is given, a return of the money received is not necessary in order to recover in the original action. p. 481.

7. RELEASE.—*Avoidance.—Necessity of Restoring Consideration.*— Where a servant was induced to sign a release of his claim for injuries by the employer's promise of future employment and in consideration of a specified sum of money, the employer's failure to provide such employment was insufficient to avoid the release in the absence of a showing that the money received had been returned. p. 482.

8. RELEASE.—*Avoidance.—Necessity of Restoring Consideration.*— The mere voluntary use by an injured employe of the money paid

in consideration of his execution of a release of his claim for injuries and his resulting inability to return the money, did not relieve him of the duty to restore it before suing to recover damages for the original injury, on the theory that the release had been obtained through fraud in the absence of a showing that such use and inability to restore resulted from the employer's conduct, or from some cause over which the employe had no control.   p. 482.

9.   RELEASE.—*Avoidance.—Pleading Fraud.—Sufficiency of Facts.*— Where, in a servant's action for personal injuries, defendants pleaded a written release of all claims which the servant had or might thereafter have on account of the accident causing the injury, and plaintiff replied that the principal inducement to his execution of the release was a promise of future employment, that after a number of weeks he was induced by defendant's physician to attempt labor, and was provided with work, but found that he was unable to perform it, that he then visited a surgeon and, for the first time, learned that there had been no union of the broken bones of his leg, and that it would have to be amputated, that such an operation was performed, that just prior to the execution of the release defendant's physician, who attended plaintiff and treated him for his injuries, falsely represented to plaintiff that his condition was favorable and that the fractured bones of his leg were united, and that, had he contemplated the result of his injury or known that he would lose his leg by amputation, he would not have accepted the money paid him under the release or considered the promise of future employment, the averments of such reply, when considered in connection with the answer, are insufficient to bring the case within the rule that where parties to a settlement have in mind and contemplation at the time of the settlement the particular injuries then known to exist, which the settlement is intended to cover, a release given under such circumstances will be limited in scope and effect to a settlement for the injuries so contemplated.   p. 483.

From Marion Superior Court (78,167); *V. G. Clifford,* Judge.

Action by Ollie E. Bailey against the Indianapolis Abattoir Company.   From a judgment for defendant, the plaintiff appeals.   *Affirmed.*

*George W. Galvin,* for appellant.

*J. W. Fesler, Harvey J. Elam* and *Howard S. Young,* for appellee.

HOTTEL, J.—This is a second appeal in an action brought by appellant in March, 1909, in the superior court of Marion county, to recover damages for a personal injury sustained by him while in the employ of appellee, and alleged to have resulted from appellee's negligence.

A brief history of the pleadings, proceedings and disposition of the case up to and including the first appeal is necessary to an understanding of the proceedings since had therein, which give rise to the questions presented by this appeal. The case as it came to this court on the first appeal involved issues tendered by the following pleadings, viz.: A complaint in one paragraph which proceeded upon the theory that appellant had been injured while in appellee's employ by being kicked by one of appellee's horses, it being alleged that the horse was vicious, that appellee knew of its vicious character, that appellant did not, and that appellee negligently failed to warn, etc. There was an answer in general denial, and a special answer setting up a written release. To the latter answer appellant filed a reply in general denial and a special reply. A trial by jury resulted in a verdict for appellant. There was an appeal to this court, and the judgment below was reversed, because of error in the giving of an instruction. The trial court was directed to grant a new trial. The opinion of this court was spread of record below, whereupon the appellant, on January 1, 1914, filed an amended complaint in two paragraphs. A written motion filed by appellee to strike this complaint from the files was sustained. On March 11, 1915, appellant filed a second amended complaint in two paragraphs, which was likewise stricken from the files upon the written motion of appellee. The

appellant then filed an amended reply in two paragraphs to appellee's original special answer setting up said release. A demurrer to these paragraphs of reply was sustained, whereupon the appellant withdrew his reply in general denial to said special answer, and elected to stand upon his pleadings, and the trial court entered the judgment in appellee's favor, from which this appeal is prosecuted. Proper exceptions were saved by appellant to each of the several rulings of the trial court sustaining said respective motions to strike out and the demurrer to said amended replies. These several rulings are separately assigned as error and relied on for reversal. The questions presented by each of such rulings respectively will be considered in the order of their disposition by the trial court as above indicated.

The theory of the first paragraph of the first amended complaint is not clear. It contains substantially all the averments of the original complaint up to and including the averments of the original injury alleged to have been caused by appellee's negligence (for which see opinion of this court on the former appeal, *Indianapolis Abattoir Co.* v. *Bailey* [1913], 54 Ind. App. 370, 102 N. E. 970), and it then avers that immediately after appellant had received his injury, and while he was in great pain and suffering, appellee, recognizing its responsibility therefor, placed him in charge of a physician and surgeon employed by it, and undertook and agreed to pay him his wages for such time as he was disabled and unable to work. Appellee thereafter paid appellant his usual weekly wage for a period of eighteen weeks, during which period appellant was under the care of said physician. At the expiration of this period, appellee assured appellant that his condition was

favorable, that the bones of his leg had properly knit, and that he would soon be able to return to work, and proposed to pay him a lump sum, viz., $200, instead of weekly wages, which would compensate him for his injuries, and more than pay his weekly wage to the time when he would be entirely recovered and able to work. Said physician, knowing the condition of appellant's injuries, assured him that the bones of his leg had thoroughly and properly knit, and that it was only a matter of a few weeks until he would be able to return to work fully recovered. Said statements of said physician were wholly false and fraudulent, and were made for the purpose of defrauding appellant, and inducing him to enter into a written discharge of appellee in consideration of the sum of $200, which was an inadequate and improper compensation for appellant's injuries, appellee and said physician knew these facts. Appellant, relying upon said representations of said physician, procured to be made by appellee, received from appellee on August 22, 1907, the sum of $200, and then executed the following agreement for settlement in full of his claim for his injuries:

"SETTLEMENT IN FULL OF CLAIM FOR PERSONAL INJURIES.

"I, Ollie E. Bailey, hereby admit and acknowledge that there has been paid to me in hand this day by Indianapolis Abattoir Company the sum of Two Hundred Dollars in full settlement, accord and satisfaction of any and all claims or demands of every description which I now have or may hereafter have against the said Indianapolis Abattoir Company of [on] account of an accident causing injury to me on or about April 8th, 1907.

"In testimony whereof, I have hereunto set

my hand and seal this 22nd day of August, 1907."

(SEAL)                    "OLLIE E. BAILEY."

"The foregoing agreement was read by Ollie E. Bailey who said that he understood it; that he knew that in signing it he was signing away his right to any further claim for the injuries therein referred to; that he was satisfied with the settlement; and that he signed it of his own free will."

"CHARLES REMSTER,
                Indianapolis, Ind.
"LIDA BAILEY,
521 W. Morris Street, Indianapolis."

Appellee paid said sum and procured the execution of said release with the intent and purpose of defrauding appellant of his rights in the premises, and of preventing him from recovering $15,000, which was due him for the injuries inflicted upon him and from which he was at the time suffering, all of which appellee well knew. Afterwards, in consequence of the injury so received, it became necessary to amputate appellant's leg, and said leg was amputated below the knee. Appellant did not know and had no opportunity to know of the condition of his leg and of the false and fraudulent representations made to him by appellee until after February 1, 1908, when he was advised by a competent surgeon that there was no union of the bones of said leg, and that amputation thereof would be necessary. "In order to save his life and enable him to recover his health and strength said surgeon * * * removed his leg, and said plaintiff (appellant) became and was rendered a cripple for life; all of which to his damage in the sum of" $15,000. Wherefore plaintiff demands judgment for $15,000.

The second paragraph contains substantially the same averments as the first, and the following additional averments respecting the fraud practiced on appellant, viz.: That at the time appellee procured said settlement and release it knew that all the representations so made by it and its said physician were false and fraudulent, that appellant was wholly ignorant of his condition, that he was relying on said representations, that the same were being made by said appellee and by said physician for the purpose of defrauding appellant of his right to recover full compensation for the injuries inflicted, which they knew must result in the amputation of appellant's leg, thereby rendering him a cripple and dependent for life, and that he would be damaged thereby "to the full extent" of $15,000. So knowing, appellee induced appellant to accept $200, which was represented to be future wages, and to sign a release, above set forth, releasing appellee from all claim for damages. Said appellee and said physician thereafter continued to assure appellant that he would recover speedily, and induced him by such representations to continue under the care of said physician until February 1, 1908. Up to said date, appellee and said physician knowingly, intentionally and purposely concealed from appellant the true condition of his leg, which was well known to them, and by divers devices and assurances prevented him from ascertaining the true condition of his injuries, assuring him that they were progressing finely, that he had a complete and perfect union of the broken bones, and that he would be able to work within a short time. After he had used up the $200 so given him by appellee in his home expenses, and when the pain became intolerable and said physician could offer no tangible

excuse for his condition, appellant visited a competent surgeon, who, upon examination, informed him that there had not been a union of said broken bones, and that amputation of said leg was necessary. Said leg was amputated just below the knee, and appellant was thereby rendered a cripple for life, "and was damaged by reason of said false, malicious and wrongful representations, thereby being induced to release the said defendant [appellee] from his rightful claim against said defendant [appellee] for said" $15,000. "That by reason of such false and fraudulent representations and inducements, and by reason of the procuring from said plaintiff [appellant] said release so given as aforesaid, which the said defendant [appellee] held and continues to hold to the wrong of this plaintiff, said plaintiff has been damaged in the sum of $15,000.00, for which he demands judgment."

The motion to strike out this pleading was based on the following grounds, viz.: That said amended complaint is not a restatement of any cause of action which the appellant has heretofore attempted to state; "that it is not a statement of any cause of action which ever could have been filed in the same complaint with the cause of action stated in the former complaints filed in this case."

It will be seen that the second paragraph, *supra,* is clearly predicated upon the fraud practiced on appellant by which he was deprived of his action

1. for damages for personal injuries, and seeks to recover the damages alleged to have resulted from the fraud. This paragraph was more than a mere departure from the action originally stated. It stated an entirely new cause of action, viz., one based on fraud resulting in an injury to a

property right, while the original action was for an injury to the person. These two causes of action are controlled by different periods of limitation. They fall in separate classes which under §279 Burns 1914, §278 R. S. 1881, may not be joined in the same suit.

While the "courts should be liberal in allowing amendments to avoid the running of the statute of limitations, yet it should be confined to cases 2. where the original cause of action is restated. The plaintiff cannot by bringing a new cause of action by way of amendment avoid the bar against it." *Blake v. Minkner* (1894), 136 Ind. 418, 422, 36 N. E. 246, and cases there cited. For the reasons indicated, it is manifest that no reversible error resulted from the action of the trial court in striking from the files the second paragraph of the amended complaint. See, also, *Thomas* v. *Hawkins* (1895), 13 Ind. App. 318, 326, 40 N. E. 813.

Appellant by his first assigned error challenges the ruling of the trial court in striking out said complaint *in toto*. Assuming, however, without so deciding, that such assignment is sufficient to challenge the action of the court in striking out each of said paragraphs, we next inquire whether reversible error resulted from striking out the first paragraph.

In our judgment, the question of striking it out was so far within the discretion of the trial court, under the facts of this case, and the law applicable thereto, that no reversible error can be predicated thereon.

As before indicated, the theory of this paragraph is uncertain. Of course, if it is predicated on 3. the fraud and seeks to recover the damages resulting therefrom, what we have said concern-

ing the ruling on the motion to strike out the second paragraph is equally applicable to it. If, on the other hand, it proceeds on the theory of an action for personal injury, resulting from appellee's negligence, and attempts to anticipate and avoid the defense of the release, then it attempts to do in a different way that which this court in effect said in the former opinion could not be done without restoring the money received by virtue of such settlement. In other words, it tenders the same issues in different form by the pleadings involved in the original appeal. We might add in this connection that while the practice of anticipating a defense is permissible and proper in some instances, it is not ordinarily commendable, and the trial court in a proper exercise of its discretionary powers would have been justified in striking out that part of this paragraph which attempted to anticipate and avoid the defense of the written release. 1 Hogate, Pl. and Pr. §385; 1 Works' Practice §361 and cases cited; Iglehart's Practice 17, §31; *Bowlus* v. *Phenix Ins. Co.* (1892), 133 Ind. 106, 110, 32 N. E. 319, 20 L. R. A. 400; *Chicago, etc., R. Co.* v. *West* (1871), 37 Ind. 211. This is especially true under the facts of this case, and the law applicable thereto as announced in the original opinion. This opinion is the law of this case—*Dodge* v. *Gaylord* (1876), 53 Ind. 365; *Hancock* v. *Diamond Plate Glass Co.* (1905), 37 Ind. App. 351, 75 N. E. 659; *James* v. *Lake Erie, etc., R. Co.* (1897), 148 Ind. 615, 48 N. E. 222; *Alerding* v. *Allison* (1907), 170 Ind. 252, 83 N. E. 1006, 127 Am. St. 363; *Westfall* v. *Wait* (1905), 165 Ind. 353, 73 N. E. 1089, 6 Ann. Cas. 788,— and it required appellant to return the money received in such settlement before he could avoid the effect thereof in an action to recover for the personal

injury involved in such original action. With such part of the paragraph stricken out, its remaining averments were in substance the same as the original complaint, and amounted to no more than a repetition of the original complaint in another paragraph, and hence the sustaining of a motion to strike out the entire paragraph accomplished no more than the motion to strike out the part thereof indicated.

It further appears that appellant was permitted to file an amended reply to the answer to the original complaint in two paragraphs, in the first of which he set out substantially the same facts, by way of avoiding the effect of said release, that were set out in said first paragraph of amended complaint. So that appellant was permitted to tender in the regular and most appropriate way, viz., by his original complaint and his reply in avoidance of the release set up in appellee's answer, the same issue that he attempted to tender in said irregular way in his first paragraph of amended complaint.

The pleadings which were permitted to be filed being such as to permit the appellant to introduce all the evidence he had which might properly have been introduced under the pleading stricken out, the striking out of such pleading would in no event be harmful, and hence, even if technically erroneous, would not be available on appeal. *Weideroder* v. *Mace* (1915), 184 Ind. 242, 111 N. E. 5; *Williams* v. *Port* (1860), 14 Ind. 569; *Lomax* v. *Bailey* (1845), 7 Blackf. 599.

True, a demurrer was sustained to each of said paragraphs of reply, but said first paragraph of complaint so stricken out was pregnant with the same infirmity contained in such reply, and hence would likewise have fallen before a demurrer. We

therefore conclude that under the facts of this case and the law applicable thereto as announced in the former opinion, the right to strike out said first amended complaint was a proper exercise of the discretionary power of the trial court, as recognized in the decisions above cited, and that no reversible error resulted from such action of the court.

The second amended complaint was filed before another judge and the averments thereof are not materially different from those of the first amended complaint, and all that we have said in regard to the ruling on said first motion applies with equal force to the ruling on the second motion.

We now address our inquiry to the correctness of the ruling on the demurrers to said second and third paragraphs of reply. Both paragraphs of reply will be considered together. The second paragraph of amended reply contains substantially, if not identically, the same averments as the original special reply involved in the former appeal, the substance of· which are set out in the opinion in that case and need not be repeated here. It contains additional averments which are in substance as follows: That as the principal and real inducement to the signing by appellant of the writing set out in appellee's second paragraph of answer, and as the main consideration for the execution thereof, appellee promised to give appellant permanent employment at such work as his physical condition would warrant, and pay him therefor from such time as he could get about on his injured leg. That after the execution of such writing appellant remained confined to his bed for a number of weeks, when, by the use of opiates, bandages and splints, appellant was induced by said physician to attempt labor, and defendant provided him with

work at his usual wages, which he undertook to perform. That he found that he could not work, and visited a surgeon, and for the first time learned that there had been no union of the broken bones of his leg, and that it would have to be amputated. That he submitted to amputation of said leg, and expended for surgical treatment, nursing and home expenses while disabled the sum of $200, paid him by appellee. That when he recovered sufficiently to be able to work, he applied to appellee for employment within the terms of his agreement and said defendant refused to give him employment which he could perform, and refused to compensate him for his injuries, or to provide for him in any way. That had he contemplated the result of his injuries, or known that it would be the loss of said leg by amputation, appellant would not have accepted said sum of $200, or considered the promise of future employment by appellee. That appellee has failed to perform its part of the agreement as to permanent employment, and has annulled it by said acts and by its fraud and misrepresentation in the procurement thereof. That by reason of said amputation and appellee's refusal to carry out the terms of its agreement as to permanent employment of appellant, appellant was at the date and before the bringing of this suit compelled to expend said $200, and was thereby prevented from returning or tendering same to appellee, and has never since possessed sufficient funds to make such tender. Appellant asked that such sum be deducted from such judgment as might be rendered for him.

The third paragraph is in substance as follows: Appellant was injured on April 8, 1907, while in defendant's employ, as alleged in his complaint. From said date to August 22, 1907, appellee, recog-

nizing its duty to appellant and its liability for his injuries, continued to pay appellant his weekly wage, as theretofore. During this period appellant was under the care of a physician employed by appellee, in whose representations appellant had the utmost confidence. Shortly prior to August 22, 1907, said physician and appellee represented to appellant that his condition was favorable, that there was a union of the bones of his leg, and that within not more than two months he would have the usual use of his leg and could return to his work. Appellant relied on the representations so made by said physician and by appellee. Appellee represented that, because of business engagements and matters personal to it, it was necessary to adjust appellant's pay in a gross sum so as to make proper entries upon its books, and proposed to pay appellant $200, instead of weekly wages, which sum would more than cover his weekly wages for the time specified by appellee and said physician "wherein he would make complete recovery." To accommodate appellee, appellant agreed to accept his wages in a gross sum, and to accept $200 as wages for the period before he should return to work. Pursuant thereto, and without any other or different consideration than the promise of permanent employment after he returned to work, appellant signed the agreement set out in appellee's second paragraph of answer, at the time believing the same to be a receipt for wages covering the period of his indisposition, and not understanding that he was parting with any right of action, or that he was receiving the money for any different purpose. After the signing of said agreement and the receipt by appellant of said $200, it developed that the representations made by said physician were untrue and false, that there had been

no union of said broken bones, that appellant's leg would have to be amputated. Appellant's leg was amputated by skilful surgeons, and appellant expended in connection with said operation, household expenses, nursing and care, said $200 paid to him, and has never been able to return or tender said sum or any part of it to appellee. Wherefore, etc.

Each of these. replies admit the execution of the release before set out herein, and attempt to avoid it. In neither paragraph is there any averment of a return of the $200 received by appellant in said settlement. The former opinion in this case expressly held that under the issues as then presented a return of the money was necessary. The law as there announced is the law of this case, by which the trial court, and this court also, is bound in all subsequent proceedings therein. *Dodge* v. *Gaylord, supra; Hancock* v. *Diamond Plate Glass Co., supra; James* v. *Lake Erie, etc., R. Co., supra; Alerding* v. *Allison, supra; Westfall* v. *Wait, supra.* We do not mean to say that appellant might not have tendered a reply in which the facts averred might avoid the necessity of a return of said money. For cases dealing with this question, see *Mullen* v. *Old Colony R. Co.* (1879), 127 Mass. 86, 34 Am. Rep. 349; note, 35 L. R. A. (N. S.) 662, subtit. "As affected by nature of fraud."

Our inquiry is limited to the averments contained in the replies here involved. In our judgment, neither paragraph of said amended reply contains any averments which can be said to differentiate such reply from the original reply in respect to the question of the necessity for the return of said money. The amendments or changes in such respect are not material, and hence are not sufficient

to avoid the law of the case as announced in the former opinion. *Alerding* v. *Allison, supra; Lebanon Nat. Bank* v. *Clinton School Tp.* (1899), 24 Ind. App. 359, 56 N. E. 857; *James* v. *Lake Erie, etc., R. Co., supra.* As before stated, neither paragraph alleges a return of said $200, nor are the averments of either sufficient to show a valid excuse for the failure to make such return, and hence were insufficient to withstand said demurrer. *Citizens' Street R. Co.* v. *Horton* (1897), 18 Ind. App. 335, 48 N. E. 22; *Louisville, etc., R. Co.* v. *Herr* (1893), 135 Ind. 591, 35 N. E. 556; *Supreme Council, etc.* v. *Apman* (1906), 39 Ind. App. 670, 80 N. E. 640; *Indianapolis Abattoir Co.* v. *Bailey, supra,* and cases cited.

Appellant lays stress on the fact that it is alleged in the third paragraph of reply that said money was paid as wages. We are not unmindful of the 6. fact that when fraud enters into the execution of a release, and the party executing it is fraudulently led to believe that the payment made to him thereunder is something other than the settlement of the case in which the release is given, a return of the money received under such circumstances is not necessary in order to recover in the original action. *Mullen* v. *Old Colony R. Co., supra; Butler* v. *Richmond, etc., R. Co.* (1891), 88 Ga. 594, 15 S. E. 668; *Shaw* v. *Webber* (1894), 79 Hun 307, 29 N. Y. Supp. 437, affirmed without opinion, 151 N. Y. 655, 46 N. E. 437; *Cleary* v. *Municipal Elec., etc., Co.* (1893), 65 Hun 621, 47 N. Y. St. Rep. 172, 19 N. Y. Supp. 951, affirmed without opinion, 139 N. Y. 643, 35 N. E. 206; note, 35 L. R. A. (N. S.) 662 subtit.: "As affected by nature of fraud."

Appellant's amended replies, however, fall short

of making such a case. The averments of the reply must be considered in connection with the answer which they seek to avoid. These averments when so considered show that the $200 received by appellant, even though representing the amount of his wage up to the time it was contemplated or stated by appellant that he would be able to resume his work, was in fact paid in settlement of his claim for injuries. The release itself so recites, and in addition shows on its face that it was read by appellant and that he understood its contents. The only fraudulent representations charged are those relating to appellant's condition. There is no charge of fraud in procuring the execution of the release, no charge that appellee fraudulently represented its contents, or that appellant could not or did not read it, and hence such replies were entirely insufficient to bring them within the rule recognized in the cases last cited.

The averments of said paragraph of reply relating to appellee's promise of future employment might be of influence in an action for damages for a 7. breach of the terms on which the settlement evidenced by the release was made, but said averments can have no effect on the question 8. under consideration. The mere voluntary use of the money by appellant and his resulting inability to make restoration, in the absence of some showing that such use and inability to restore resulted from appellee's conduct, or from some cause over which appellant had no control, lacks the essential element of equity necessary to justify the court in relieving him from the duty to restore before proceeding to recover damages for the original injury. *Strodder* v. *Southern Granite Co.* (1896), 99 Ga. 595, 601, 27 S. E. 174.

Appellant cites and apparently relies on the case of *Shook* v. *Illinois Cent., etc., Co.* (1902), 115 Fed. 57, 52 C. C. A. 651. This case recognizes and

9. approves the rule that where the parties to the settlement have in mind and contemplation at the time of the settlement the particular injuries then known to exist, which the settlement is intended to cover, a release given under such circumstances will be limited in scope and effect to a settlement for the injuries so contemplated and in the mind and intent of the parties when the settlement was made.

The averments of the replies in the case at bar, especially when considered in connection with the answer to which they are addressed, and the provisions of the release which they seek to avoid, do not present a case to which the rule thus announced is applicable. In the light of the averments of these pleadings, and the release made part of the answer, it cannot be seriously contended that it was the intention of the parties to limit this settlement to any particular injuries then in the mind of the parties. The replies at most show that such intention may have been in the mind of appellant, but there are no averments that even tend to show that appellee intended to limit its settlement, and the release itself clearly expresses a contrary intention.

For the reasons indicated, we are of the opinion that the ruling on the demurrer to said replies furnishes no ground for reversal.

Finding no error in the record, the judgment below is affirmed.

Note.—Reported in 118 N. E. 374. Release, procuring by fraud, repudiation, necessity for returning or tendering consideration, Ann. Cas. 1912D 1084. See under (3) 31 Cyc 109, 110; (6, 7) 34 Cyc 1071.